### SORENSON et al. v. SUTHERLAND et al.
### No. 99.

Circuit Court of Appeals, Second Circuit.
Feb. 19, 1940.

Leonard B. Smith and Selden Bacon, both of New York City (Nathan L. Miller and Selden Bacon, both of New York City, of counsel), for appellant Irving Trust Co. as executor of Hermann Sielcken, deceased.

Francis M. Shea, Asst. Atty. Gen., John T. Cahill, U. S. Atty., of New York City, Francis J. McNamara, Sp. Asst. to Atty. Gen., and Frank C. Sterck and James A. Shipper, both of Washington, D. C., Attys., Department of Justice (David W. Wainhouse, of New York City, of counsel), for appellee and cross-appellant, Attorney General.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

A decree of the District Court dated December 30, 1929 adjudged that Z. E. G. was indebted to the plaintiffs in the sum of $380,761.54 and interest, aggregating altogether $716,160.37, and that the Alien Property Custodian and the Treasurer of the United States should pay that amount to the plaintiffs as surviving partners of Crossman & Sielcken out of property of Z. E. G. which had been seized by the Alien Property Custodian. The aggregate with interest accrued since the date of the decree was paid to the plaintiffs by the Alien Property Custodian and Treasurer on April 17, 1930. About nine years after entry of the foregoing decree it was vacated on the application of the Attorney General upon the ground that the court had lacked jurisdiction to entertain the suit and make the decree because Hermann Sielcken, a member of Crossman & Sielcken, had resided in Germany since 1914 and had thus become an enemy alien after war was declared. In our opinion the various issues involved in the motion to vacate the decree were before Judge Caffey and his decision was binding on the later court. Chicot County Drainage District v. Baxter State Bank, 60 S.Ct. 317, 84 L.Ed. ——, decided by the Supreme Court on January 2, 1940; Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104.

The bill of complaint before Judge Caffey alleged that Sorenson, Nielsen and Hermann Sielcken were citizens and residents of the United States and were doing business under the name of Crossman & Sielcken up to the date of the death of Sielcken, that that firm had at all times been a resident of New York, had not been a resident within the territory of any nation with which the United States was at war and was not at any time an enemy or ally of enemy. Z. E. G. not only denied these allegations but also set up the separate defense that Sielcken resided in Germany when war was declared and that he became an enemy alien, that the firm of Crossman & Sielcken was dissolved by the declaration of war and that the claim asserted by the plaintiffs as surviving partners belonged to the estate of Sielcken and not to the plaintiffs as surviving partners. The government, likewise, attacked the bill both by way of demurrer and by answer and raised the same issues.

The adjudication by Judge Caffey that Z. E. G. owed the plaintiffs $716,160.17 and that they should recover that amount, necessarily involved findings that Sielcken resided in New York at the time of his death, that he was not an enemy alien within the meaning of the Trading with the Enemy Act and that the claim against Z. E. G. belonged to the plaintiffs as surviving and liquidating partners of Crossman & Sielcken. Section 9(a) of the Act provides that "any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, or to whom any debt may be owing from an enemy or ally of enemy whose property or any part thereof shall have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States may file with the said custodian a notice of his claim under oath". The section goes on to provide that such a claimant who has filed a notice of claim may "institute a suit in equity * * * in

the district court of the United States for the district in which such claimant resides * * * to establish the interest, right, title, or debt so claimed, and if so established the court shall order the payment * * * to said claimant * * *".

By the decree of December 30, 1929 it was necessarily held that the plaintiffs had filed their claim as required by the Trading with the Enemy Act and that Z. E. G. was an enemy alien and owed moneys to the partnership to the amount of $716,160.37 adjudged to be due.

The statement in the opinion of the court below (D.C., 27 F.Supp. 44, 51) that Article "Second" of the bill "as to non-enemy status" did not allege facts sufficient to confer jurisdiction on the court seems to have disregarded the allegation in Article "First" that Sorenson, Nielsen and Sielcken were "all * * * citizens and residents of the United States" and that of Article "Second" itself that the partnership of Crossman & Sielcken "was not, nor at any time has it been, an enemy or ally of enemy." These allegations were to the effect that each member of the firm was at all times a resident and citizen of the United States and the answers put them directly in issue.

█ In addition to the alleged defect in pleading the court was apparently of the belief that if it found Sielcken to have been in fact a resident of Germany the issues raised by the original bill and answers and necessarily determined in favor of the plaintiffs by Judge Caffey could be disregarded because his decision was based on erroneous findings affecting jurisdiction. But whatever may have been the trend of the earlier authorities the decisions of the Supreme Court in Chicot County Drainage District v. Baxter State Bank, supra, decided January 2, 1940, and Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104, make the decree of December 30, 1929, res judicata as to the issues involved in the motion to vacate. In rendering that decree Judge Caffey was obliged to resolve disputed questions of fact on which his jurisdiction depended and his decision that the jurisdictional facts were established cannot be collaterally attacked. In Chicot County Drainage District v. Baxter State Bank, supra, the Supreme Court held the parties to an action to be bound by a judgment of a United States District Court which necessarily involved recognition of an act as constitutional, even though the

act was later in another proceeding held to be invalid, Ashton v. Cameron County Dist., 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309, and the question as to its constitutionality had not expressly been raised in the former action. Attack on the former judgment on the ground that lack of jurisdiction made it void was therefore precluded. The government had the same opportunity to present the issue as to residence and citizenship of Sielcken in the trial before Judge Caffey as in the later proceeding and can gain no right to a second presentation.

█ The case at bar falls clearly within the rule of Stoll v. Gottlieb and of the Chicot County decision. Not only was there every opportunity to present the matters now relied on by the government in the trial before Judge Caffey, but those matters were expressly raised and argued before him. It is true that it was not argued to Judge Caffey that the material facts were "jurisdictional"; but it was urged that the plaintiffs had no right to sue under the Trading with the Enemy Act—which is the very issue of jurisdiction which is now before this court. Apart from the failure to use the word "jurisdiction" the parties to the previous trial could scarcely have raised the issue of right to sue more squarely. The answer of Z. E. G. alleged that title to the claim was held by the Custodian and that the German firm of Wille & Company had a half interest in the claim. In oral argument before Judge Caffey, dismissal of the action was asked by counsel for the government on the ground that Sielcken was an enemy under the Act.

The issues thus raised are the same issues which are pertinent on the "jurisdictional" question of right to sue under the Trading with the Enemy Act. Even if Judge Caffey was wrong in deciding these issues in favor of the plaintiffs the government should have taken an appeal from his decision if it wished to question it further. No appeal was taken and the merits of these questions cannot be now raised on a motion to vacate. No more is thus requested than a reconsideration of matters on which there was a full hearing. Once lost, the right to appeal cannot be regained in this circuitous manner.

The decision in Vallely v. Northern Fire Ins. Co., 254 U.S. 348, 41 S.Ct. 116, 65 L.Ed. 297, was strongly relied upon by the court below, but the distinction between

that case and the case at bar is the same one pointed out by Justice Reed when distinguishing it from Stoll v. Gottlieb, supra, namely, that in Vallely v. Northern Fire Ins. Co., supra, the question of jurisdiction had not been litigated in the prior suit, whereas in Stoll v. Gottlieb, supra, and in the case at bar it was. But in Chicot County Drainage District v. Baxter State Bank, supra, an earlier decision was held binding even though the question of jurisdiction had not been raised at the first trial, because it might have been raised there and was necessarily involved.

The court below, in the course of its opinion, stated that the plaintiffs were made parties "for the purpose of 'creating a case cognizable' under the Trading with the Enemy Act" and that the decree was, therefore, collusively obtained. But the right of the plaintiffs to sue was the very matter in issue before Judge Caffey. The objections to their claim because their partner Sielcken was an enemy alien and was the sole owner of the capital of the partnership and their firm was engaged in a joint enterprise with Wille & Company, an alleged enemy alien concern, were all overruled by Judge Caffey. There can be no basis for impeaching his decree in a new litigation on the very grounds urged at the original trial (United States v. Throckmorton, 98 U.S. 61, 66, 25 L.Ed. 93), even though those grounds were jurisdictional. Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104.

Although the government only moved to set the decree aside for lack of jurisdiction, there was some attempt in its affidavits to show that the judgment of the plaintiffs against Z. E. G. under the decree of December 30, 1929, was collusive because a prior agreement had been made with Z. E. G. by the German executors of Sielcken to indemnify it against any recoveries by Sorenson and Nielsen, as surviving partners of Crossman & Sielcken. In other words, there seems to be a contention by the government (though it was not alluded to in the opinion of the court below or urged on this appeal) that the plaintiffs obtained judgment against the funds of Z. E. G. in the hands of the Custodian, knowing that a substantial part of their recovery was to be turned back to Z. E. G. and that in April, 1930, they repaid to Z. E. G. a substantial percentage of the recovery pursuant to this understanding. The answer to the government's contention by the Irving Trust Company as executor of Sielcken is (1) that the agreement of indemnity made by Sielcken's German executors was not binding on the Trust Company as American executor, (2) that the agreement was of doubtful validity, and (3) that Mr. Rhodes, who represented the government in the trial before Judge Caffey, knew all about the agreement of indemnity and the return to Z. E. G. of part of the recovery.

The claim that Rhodes was not aware of these facts was based on an unverified statement made by the latter to the government attorney Sterck.

The proceeds of the recovery of the plaintiffs were distributed in April, 1930, under an agreement of settlement, made after the entry of the decree by Judge Caffey. At the time of the settlement there were substantial assets of the Sielcken estate in Germany out of which the agreement of indemnity, if held valid by German courts, might have been satisfied, and the settlement was made and carried out some time after the entry of the decree. Therefore, the mere payment to Z. E. G. from the American assets would not show that the judgment recovered against them by the plaintiffs was fraudulent in whole or in part.

Moreover, if a decree is to be set aside, on the ground of fraud, nine years after it was rendered, the remedy would have to be by bill of review, which would only be allowed if the court were satisfied that the evidence was not available at the time the original suit was litigated and that it was presented without undue delay after discovery. United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93; Central Trust Co. v. Grant Locomotive Works, 135 U.S. 207, 10 S.Ct. 736, 34 L.Ed. 97; Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 421, 43 S.Ct. 458, 67 L.Ed. 719. In no event would there be any justification for setting aside a decree on affidavits without examination and cross examination of witnesses particularly where the affidavits proved to be contradictory in respect to important issues. It is perhaps unnecessary to reiterate that the trial court only vacated the decree for lack of jurisdiction and that we hold it was precluded from doing this because the same issues were involved in the trial before Judge Caffey.

The order of the court below is reversed and the motion to set aside the decree of December 30, 1929 is denied.