## STOLL *v.* GOTTLIEB.

No. 20.   Argued October 14, 1938.—Decided November 21, 1938.

166

*Mr. Albert W. Froehde,* with whom *Mr. Russell F. Locke* was on the brief, for petitioner.

*Mr. David Shipman* submitted for respondent.

MR. JUSTICE REED delivered the opinion of the Court.

This certiorari was allowed to review a judgment of the Supreme Court of Illinois. That court had denied effect to a plea of *res judicata* arising from orders of a district court in bankruptcy. Provisions declaring the supremacy of the Constitution and the extent of the judicial power and authorizing necessary and proper legislation to make the grants effective confer jurisdiction upon this Court to determine the effect to be given decrees of a court of the United States in state courts.[1] As the contention is that the ruling below disregarded decrees of a court of the United States, it raised a federal question reviewable under § 237b of the Judicial Code.[2]

[1] *Crescent City Live Stock Co.* v. *Butchers' Union,* 120 U. S. 141, 146; *Embry* v. *Palmer,* 107 U. S. 3, 9; *Metcalf* v. *Watertown,* 153 U. S. 671, 676; *Atchison, T. & S. F. Ry. Co.* v. *Sowers,* 213 U. S. 55, 65.

[2] *Dupasseur* v. *Rochereau,* 21 Wall. 130, 134; *Crescent City Live Stock Co.* v. *Butchers' Union,* 120 U. S. 141, 142; *Des Moines Nav. Co.* v. *Iowa Homestead Co.,* 123 U. S. 552, 559; *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Long Island Loan & Trust Co.,* 172 U. S. 493, 507; *Motlow* v. *State ex rel. Koeln,* 295 U. S. 97, 98.

The admission of facts, and uncontroverted allegations of the pleadings, show that Ten Fifteen North Clark Building Corporation filed a petition for reorganization on June 20, 1934, under § 77B of the Bankruptcy Act in the United States District Court for the Northern District of Illinois; that the petition was approved as properly filed shortly thereafter, and that notice of the proceedings was given to the creditors, one of whom was respondent William Gottlieb. A proposed plan of reorganization was filed by the debtor which provided for the substitution of one share of common stock in the Olympic Hotel Building Corporation for each $100 principal amount of the outstanding first mortgage, 6½% gold bonds of the debtor corporation, the discharge of the bonds and the cancellation of a guaranty endorsed on them. The guaranty was one of J. O. Stoll, petitioner here, and S. A. Crowe, Jr., to pay the bond. Its material provisions are stated below.[3] The extinction of the personal guaranty was in consideration "for the transfer of all the assets of said Debtor [i. e., the Building Corpora-

---

[3]                    "GUARANTY.

"For Value Received, the undersigned, Do Hereby Guarantee the payment of the within bond and the interest thereon, at the maturity thereof either by the terms of said bond or of any agreement extending the time of payment thereof, or by anticipation of maturity at the election of the legal holder or owner thereof, in accordance with any provision of said bond or of the trust deed given to secure the same, or of any extension agreement; and do hereby absolutely guarantee the payment of the respective interest coupons, given to evidence the interest on said bond, and all extension coupons, at their respective dates of maturity, and all interest on said coupons, and do hereby absolutely guarantee the full and complete performance by the maker of the trust deed given to secure the said bonds and coupons, and its successors and assigns, of all of the terms, provisions, covenants and agreements of the said trust deed and of any such extension agreement."

tion] to the Olympic Hotel Building Corporation and the surrender of the said Common Stock of the Debtor." Crowe and Stoll, together with other stockholders of the debtor, "filed their acceptances in writing" of the plan.

On notice to respondent and a hearing at which he did not appear the proposed plan of reorganization with the provision for the extinction of the guaranty was confirmed over the objections of creditors of the same class as respondent. The confirmation provided that all creditors of the debtor should be bound. It also appears that, in accordance with the plan, the guarantors caused the assets of the debtor to be transferred to the new corporation and surrendered the capital stock of the debtor. After the institution of the present action in the state court Gottlieb filed a petition in the proceedings for reorganization of the Ten Fifteen North Clark Building Corporation praying that an order be entered vacating or modifying the decrees and orders entered in the proceedings confirming the plan of reorganization, on the ground that the district court in proceedings for reorganization did not have power or jurisdiction to cancel the guaranty. An order was entered denying this petition. No appeal was taken from any of the bankruptcy orders.

Subsequent to the confirmation of the plan of reorganization but before the petition to vacate these orders Gottlieb began an action in the Municipal Court of Chicago against the guarantors Crowe and Stoll to recover upon their guaranty of three of the $500 bonds of Ten Fifteen North Clark Building Corporation. Crowe was not served with summons. Stoll defended on the ground that the order of the bankruptcy court confirming the plan of reorganization with release of his guaranty and its further order, denying Gottlieb's petition to set aside the decree providing for the release of the guaranty, were *res judicata*.

170

The Municipal Court granted the relief sought by the bondholder, the appellate court reversed and its judgment was in turn reversed by the Supreme Court of Illinois, which affirmed the judgment of the Municipal Court.[4] Two justices dissented.

The Congress enacted, as one of the earlier statutes, provisions for giving effect to the judicial proceedings of the courts. This has long had its present form.[5] This statute is broader than the authority granted by Article Four, section one, of the Constitution to prescribe the manner of proof and the effect of the judicial proceedings of states. Under it the judgments and decrees of the federal courts in a state are declared to have the same dignity in the courts of that state as those of its own courts in a like case and under similar circumstances.[6] But where the judgment or decree of the federal court determines a right under a federal statute, that decision is "final until reversed in an appellate court, or modified or set aside in the court of its rendition." [7] As this plea was based upon an adjudication under the reorganization pro-

---

[4] 368 Ill. 88; 12 N. E. 2d 881.

[5] Rev. Stat. § 905. "The acts of the legislature of any State or Territory, or of any country subject to the jurisdiction of the United States, shall be authenticated by having the seals of such State, Territory, or country affixed thereto. The records and judicial proceedings of the courts of any State or Territory, or of any such country, shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken."

[6] *Dupasseur* v. *Rochereau*, 21 Wall. 130; *Embry* v. *Palmer*, 107 U. S. 3, 9; cf. *Metcalf* v. *Watertown*, 153 U. S. 671.

[7] *Deposit Bank* v. *Frankfort*, 191 U. S. 499, 520.

visions of the Bankruptcy Act, effect as *res judicata* is to be given the federal order, if it is concluded it was an effective judgment in the court of its rendition. The problem before the Supreme Court of Illinois was not one of full faith and credit but of *res judicata*. In this particular case, a federal question was involved. This was the power of the federal courts to protect those who come before them relying upon constitutional rights or rights given, as in this case, through a statute enacted pursuant to constitutional grants of power.

The inquiry is to be directed at the conclusiveness of the order releasing the guarantor from his obligation, assuming the Bankruptcy Court did not have jurisdiction of the subject matter of the order, the release in reorganization of a guarantor from his guaranty of the debtor's obligations.[8]

A court does not have the power, by judicial fiat, to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators. There must be admitted, however, a power to interpret the language of the jurisdictional instrument and its application to an issue before the court.[9] Where adversary parties appear, a court must have the power to determine whether or not it has jurisdiction of the person of a litigant,[10] or whether its geographical jurisdiction covers the place of the occurrence under consideration.[11] Every court in rendering a judgment, tacitly, if not expressly, determines its juris-

---

[8] We express no opinion as to whether the Bankruptcy Court did or did not have jurisdiction of the subject matter. Cf. *In re Diversey Building Corp.*, 86 F. 2d 456; *In re Nine North Church Street, Inc.*, 82 F. 2d 186; *Union Trust Co.* v. *Willsea*, 275 N. Y. 164, 167; 9 N. E. 2d 820.

[9] As illustrations of the exercise of this power, see *Texas & Pacific Ry. Co.* v. *Gulf, C. & S. F. Ry. Co.*, 270 U. S. 266, 274; *Matter of Gregory*, 219 U. S. 210, 217.

[10] *Baldwin* v. *Traveling Men's Assn.*, 283 U. S. 522.

[11] *Jones* v. *United States*, 137 U. S. 202.

diction over the parties and the subject matter.[12] An erroneous affirmative conclusion as to the jurisdiction does not in any proper sense enlarge the jurisdiction of the court until passed upon by the court of last resort, and even then the jurisdiction becomes enlarged only from the necessity of having a judicial determination of the jurisdiction over the subject matter. When an erroneous judgment, whether from the court of first instance or from the court of final resort, is pleaded in another court or another jurisdiction the question is whether the former judgment is *res judicata*. After a federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of *res judicata* is made has not the power to inquire again into that jurisdictional fact.[13] We see no reason why a court, in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court[14] making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation. In this case the order upon the petition to vacate the confirmation settled the contest over jurisdiction.

Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first.

---

[12] *Chicago Life Ins. Co.* v. *Cherry,* 244 U. S. 25, 29.

[13] *Chicago Life Ins. Co.* v. *Cherry,* 244 U. S. 25, 30; *Baldwin* v. *Traveling Men's Assn.,* 283 U. S. 522, 525; *Davis* v. *Davis, ante,* p. 32.

[14] The Bankruptcy Court is one of general jurisdiction. *Fairbanks Shovel Co.* v. *Wills,* 240 U. S. 642, 649.

That a former judgment in a state court is conclusive between the parties and their privies in a federal court when entered upon an actually contested issue as to the jurisdiction of the court over the subject matter of the litigation, has been determined by this Court in *Forsyth* v. *Hammond.*[15] The petitioner, Caroline M. Forsyth, sought by injunction in the federal court to forbid the City of Hammond from collecting taxes on certain lands, annexed to the city by an earlier state court decree. The city contended that the earlier decree was decisive, the petitioner that it was void because the enlargement of a city was a matter of legislative, not judicial, cognizance. Without determining the issue whether annexation itself is a function solely of the legislature, this Court upheld the contention of the city on the ground that the petitioner had taken an appeal to the Supreme Court of Indiana from the earlier decree of the trial court against her in the annexation proceedings, and had in that appeal attacked the validity of the decree on the ground of lack of jurisdiction. "Having litigated a question in one competent tribunal and been defeated, can she litigate the same question in another tribunal, acting independently, and having no appellate jurisdiction? The question is not whether the judgment of the Supreme Court would be conclusive as to the question involved in another action between other parties, but whether it is not binding between the same parties in that or any other forum."[16]

Other instances closely approaching the line of this case may be examined.

In *Des Moines Navigation & Railroad Co.* v. *Iowa Homestead Co.*,[17] this Court was called upon to resolve a controversy over the effect of a judgment of the federal

---

[15] 166 U. S. 506, 515.

[16] *Id.* 517.

[17] 123 U. S. 552.

courts in a matter beyond their jurisdiction. The suit was brought by the Homestead Company in the state court to recover certain taxes which were the subject of litigation between the same parties in *Homestead Company* v. *Valley Railroad,* 17 Wall. 153. In the earlier case the decision had been adverse to the Homestead Company. When the Navigation Company pleaded the earlier decree in bar to the later action, it was met with the reply that the courts of the United States, which had rendered the earlier decree "had no jurisdiction of said suit and no legal power or authority to render said decree or judgment." The reason for this assertion was that the earlier suit had been instituted in a state court by the Homestead Company, an Iowa corporation, against various non-resident defendants and the Navigation Company, also an Iowa corporation. The individual defendants caused a removal to the federal court and all defendants, including the Navigation Company, appeared, filed answers and defended the action. The Homestead Company likewise appeared and actually contested issues in dispute with the Navigation Company. The litigation eventually reached this Court and was decided without reference to the lack of jurisdiction. In the later case this Court assumed that the exercise of jurisdiction by the United States Circuit Court over the controversy between the two Iowa corporations was improper. It was held, however, that the earlier decree was a "prior adjudication of the matters in controversy" and a bar to the later action.

A few years later this Court had occasion to examine again the question of the effect of a former adjudication by a United States Circuit Court in a case where this Court assumed the Circuit Court had jurisdiction of the parties but not of the subject matter. The earlier adjudication was pleaded in bar to a suit to quiet title in a state court sitting in the same state as the Circuit Court.

The state courts denied effect to the Circuit Court decree. On writ of error to the Supreme Court of Oregon this Court answered the contention that the ground upon which "the Federal court assumed jurisdiction was insufficient in law to make this case one arising under the laws of the United States" in these words:

"But that was a question which the Circuit Court of the United States was competent to determine in the first instance. Its determination of it was the exercise of jurisdiction. Even if that court erred in entertaining jurisdiction, its determination of that matter was conclusive upon the parties before it, and could not be questioned by them or either of them collaterally, or otherwise than on writ of error or appeal to this court." [18]

The decision in the *Des Moines* case is not precisely parallel with the circumstances of the present case because the determination was based upon diversity of citizenship between other parties to the controversy [19] and *Dowell* v. *Applegate* may likewise be seen to deviate slightly since there was color of jurisdiction in the federal court by reason of certain allegations as to violation of Acts of Congress in the stamping of the deeds.

A case likewise closely approaching the circumstances of the present controversy is *Vallely* v. *Northern Fire & M. Ins. Co.*[20] A corporation alleged to be engaged in the insurance business was adjudicated an involuntary bankrupt in the teeth of the Bankruptcy Act, § 4-*b*, that "any moneyed . . . corporation, except [an] . . . insurance . . . corporation, . . . may be adjudged an involuntary bankrupt." There was a default, acquiescence and aid to the trustee by the bankrupt. After the time for review of the adjudication had expired, the bankrupt filed a motion to vacate the adjudication as null and void. This Court

[18] *Dowell* v. *Applegate*, 152 U. S. 327, 340.
[19] *Vallely* v. *Northern Fire & M. Ins. Co.*, 254 U. S. 348, 354.
[20] 254 U. S. 348.

upheld the motion. It was pointed out that a determination of a jurisdictional fact such as whether an alleged bankrupt is a farmer, binds,[21] but that where there was no statute of bankruptcy applicable "necessarily there is no power in the District Court to include," the excepted corporation. It was thought that to recognize the binding effect of the judgment would be to extend the jurisdiction. This decision is inapplicable here because there was not an actually contested issue and order as to jurisdiction. The case is also distinguishable because the motion to vacate was made in the same bankruptcy proceeding as the order. We do not comment upon the significance of this variable.

To appraise the cases dealing with status and transfer of title to real estate seems outside the scope of the present inquiry. The rule applied here may or may not be applicable in instances where the courts with jurisdiction of the later controversy are passing upon matters of status and real estate titles.[22]

It is frequently said that there are certain strictly jurisdictional facts, the existence of which is essential to the validity of proceedings and the absence of which renders the act of the court a nullity. Examples with citations are listed in *Noble* v. *Union River Logging R. Co.*[23] For instance, service of process in a common law action within a state, publication of notice in strict form in proceedings *in rem* against absent defendants, the appointment of an administrator for a living person, a court martial of a civilian. Upon the other hand there are quasi-jurisdictional facts, diversity of citizenship, majority of litigants, and jurisdiction of parties, a mere finding of which,

[21] *Denver First Nat. Bank* v. *Klug*, 186 U. S. 202.

[22] Cf. *Andrews* v. *Andrews*, 188 U. S. 14; s. c. 176 Mass. 92; 57 N. E. 333; *Fall* v. *Eastin*, 215 U. S. 1; *Carpenter* v. *Strange*, 141 U. S. 87, 105.

[23] 147 U. S. 165.

regardless of actual existence, is sufficient. As to the first group it is said an adjudication may be collaterally attacked, as to the second it may not. We do not review these cases as we base our conclusion here on the fact that in an actual controversy the question of the jurisdiction over the subject matter was raised and determined adversely to the respondent. That determination is *res adjudicata* of that issue in this action, whether or not power to deal with the particular subject matter was strictly or quasi-jurisdictional.

*Judgment reversed.*

MR. JUSTICE MCREYNOLDS concurs in the result.