JoNes, Judge,
delivered the opinion of the court:
The jurisdictional act under which this suit is brought is set out in the findings. It provides that all claims of whatsoever nature which the Sioux Tribe of Indians may have against the United States “which have not heretofore been *78 determined by the Court of Claims, may be submitted to the Court of Claims.”
Under the terms of the act several suits were filed. The basis of the present suit has been narrowed to the single question of whether under the terms of the act conferring jurisdiction the plaintiffs are entitled to recover $1,903,023.22 heretofore paid to them by the defendant under the treaty of 1868 (15 Stat. 635) and subsequently charged as an offset against other claims of the plaintiffs litigated in the case of Medawakanton Indians et al. v. United States, 57 C. Cls. 357.
Briefly, by the treaty of September 29, 1837 (7 Stat. 538), the Sioux Nation of Indians ceded certain lands to the United States and the United States agreed to invest for the benefit of such Indians the sum of $300,000.00 and to pay them interest thereon at the rate of not less than 5 per centum forever.
By the treaty of August 5, 1851 (10 Stat. 954) the defendant, as consideration for the cession of certain lands, established an additional trust fund in the sum of $1,160,-000.00 (increased in the Senate by amendment to $1,229,-000.00) with interest thereon at 5 per centum, commencing July 1,1852, to be paid annually over a period of fifty years, such fifty payments to discharge both principal and interest.
In the year 1862 a serious outbreak occurred among the Indians of Minnesota during which many white people were killed and much property destroyed.
Following this outbreak, the Congress on February 16, 1863, abrogated and annulled all treaties theretofore made and entered into by certain tribes of the Sioux Indians, including the ones at interest in this cause, in so far as said treaties, or any of them, purported to impose any future obligation on the United States. All lands and rights of occupancy within the State of Minnesota, and all annuities and claims theretofore accorded the said Indians, or any of them, were declared to be forfeited to the United States. It was cited as a reason for such cancellation that “during the past year the aforesaid bands of Indians made an unprovoked, aggressive, and most savage war upon the United States, and massacred a large number of men, women, and *79 children, within the State of Minnesota, and destroyed and damaged a large amount of property” (12 Stat. 652).
On April 29,1868, the Sioux Indians, including the parties at interest herein, entered into a treaty of amity with the United States (15 Stat. 635). By the terms of this treaty certain lands therein described were set apart for the tribes of the Sioux Indians and the United States agreed to furnish the Indians certain monies, clothing, and articles of property and educational facilities.
It was also stipulated by Article 17 of such treaty that it should have the effect and should be construed “as abrogating and annulling all treaties and agreements heretofore entered into between the respective parties hereto, so far as treaties and agreements obligate the United States to furnish and provide money, clothing, or other articles of property to such Indians and bands of Indians as become parties to this treaty.”
By the terms of this treaty the United States expended on behalf of the Indians between the years 1870 and 1921 the sum of $1,903,023.22.
On March 4, 1917, the Congress by special act (39 Stat. 1195), conferred jurisdiction upon the Court of Claims to hear, determine, and render final judgment for any balance found due to certain bands of Indians, parties at interest herein, for any annuities that might be ascertained to be due said bands of Indians under the treaties of 1837 and 1851 heretofore referred to.
Pursuant to this act, suit was filed and the Court of Claims, after exhaustive investigation, rendered judgment for plaintiff Indians in that suit in the net sum of $386,597.89.[1]
The Court'of Claims calculated the different sums provided for plaintiff Indians under the two treaties mentioned, and also calculated the different offsets which the defendant should be allowed for expenditures made, and arrived at the balance due the plaintiff Indians under the terms of the jurisdictional act.
Among the sums allowed to the defendant as an offset in that case was $1,903,023.22 expended in behalf of the Indians under the treaty of 1868, supra.
*80 This sum is the controverted issue in this case.
Plaintiffs contend that the expenditure of this sum was required as an obligation of the treaty of 1868; that it had no connection whatever with the obligation of the previous treaties, and that under the jurisdictional act of 1917, supra, the Court of Claims had no choice but to allow the offset, that the effect of the court’s action was to reimburse the defendant for an obligation that was due and owing to the plaintiffs, and that “in effect, therefore, the defendant never expended for the benefit of the plaintiffs the sum of $1,903,023.22 that it was compelled to expend for them under the terms of the treaty of April 29, 1868. * * * because it legally but unjustifiably recouped itself.”
The defendant contends:
(1) That the court is without jurisdiction because, in the decision under the jurisdictional act of 1917, it already had determined the validity and legality of the offset of $1,903,023.22;
(2) That plaintiffs’ claim is barred under the doctrine of res judicata;
(3) That plaintiffs are estopped to deny the legality and validity of the offset, because they accepted the benefits of the jurisdictional act of 1917; and
(4) That, on the merits, the plaintiffs would not be entitled to recover.
The parties in interest were also the parties plaintiff in Medawakanton Indians et al. v. United States, supra. Certain changes in name and residence of the bands are not material to this action. Any interests of any of the other plaintiffs named in this suit are covered by the sanie principles and facts enunciated here. The Sioux Tribe of Indians, the nominal plaintiffs in this action, include the Santee Indians for whose benefit this suit is brought.
We do not think plaintiffs are entitled to recover.
It will be noted that the act of 1920 (41 Stat. 738), under which this suit is brought, confers jurisdiction to hear and determine all claims, “which have not heretofore been determined by the Court of Claims.”
The defendant insists that the quoted clause leaves the court without jurisdiction by virtue of the decision in the Medawa *81 kanton case, supra, wherein the sum herein sued for was applied as a setoff against obligations under previous treaties. It cites as sustaining authority the case of Eastern or Emigrant Cherokees v. United States, 82 C. Cls. 180 (certiorari denied 299 U. S. 551).
Apparently recognizing the force of this contention, the plaintiffs do not sue for any unpaid balances under the treaties of 1837 or 1851, but bottom their suit on the allegation that the obligations under the treaty of 1868 are “in effect” unpaid.
We quote from plaintiffs’ brief:
In the prior suit the plaintiffs’'cause of action was limited to their rights under their annuity treaties of 1837 and 1851. No cause of action was given the plaintiffs as to their rights under the Treaty of April 29, 1868. Thus, the present suit is not premised upon any prior claim of the plaintiffs before this Court.
Plaintiffs’ suit therefore is based primarily on alleged violations of the treaty of 1868, or failure to fulfill its obligations. They admit that over the period of fifty years the defendant complied with all its terms, but insist that since that amount was applied as an offset in a suit to recover payments under previous treaties, the money was in effect not expended.
This seems rather a strained construction.
Full payment was actually made under the treaty of 1868. None of the money was ever returned by the plaintiffs. In the suit under the 1917 act for unpaid balances under the theretofore abrogated treaties of 1837 and 1851, the court offset or reduced the payments called for in such treaties by the amount of the payments under the treaty of 1868.
It naturally follows that the obligations of the 1868 treaty have been met. If any part of any obligations remains unpaid it is a part of the obligations of the treaties of 1837 and 1851, which on the direct issue were reduced by a pleaded offset.
Plaintiffs insist that while the obligations of the treaty of 1868 have been paid, they have not “in effect” been paid. We almost get lost on the way. We are unable to follow this meandering type of logic.
We hold that the obligations of the treaty of 1868 have been complied with both in fact and in effect.
*82 By the terms of the jurisdictional act of 1917 the Court of Claims was authorized to go fully into the claims of the plaintiff Indians under the treaties of 1837 and 1851 as if the act of forfeiture had not been passed, and to ascertain the amount of any unpaid obligations under such treaties; and to ascertain and set off against any amount found due under said treaties all monies paid to said Indians or expended on their account by the Government of the United States, subsequent to the abrogation of the treaties by the act of 1863, swpm. It was further provided that the treaty of 1868 “shall not be a bar to recovery, but all equities and benefits received thereunder by the Santee Sioux Indians shall be taken into consideration in the determination of the amount of recovery.”
The court, in the Medawakanton case, interpreted the special act as conferring jurisdiction to pass upon these particular items and has rendered judgment in the matter, which is final and conclusive.[2]
As we read the opinion, the court decided, and we think properly so, that the act of 1917 required the offset of any payments made under the treaty of 1868. It is difficult to ascertain from the language in the brief what is the precise contention plaintiffs make on this point. Expressed in our own language, we construe such contention to be that the deduction by the court was a purely mechanical thing, a matter of calculation, and that the question of whether the offset should be made as a matter of justice was never before the court, it having been predetermined by the Congress which wrote the act.
If this viewpoint is accepted, and there is strength to the position, we are still face to face with the fact that this suit is based on the treaty of 1868, which has been fully complied with, and is not based on non-payment of obligations of earlier treaties.
Even conceding that the court in the Medawakanton case did not pass upon the merits of whether the offset in question should be allowed, but merely followed the mandatory direction of the Congress, thus treating the entire question as *83 before us anew, and considering all the equities under the jurisdictional act of 1920, we do not think that plaintiffs are legally or equitably entitled to recover.
Under the earlier treaties defendant obligated itself to pay to plaintiffs certain annuities. Following the outbreak in 1862 any further obligation under these treaties was declared to be forfeited.
Later the treaty of 1868 was entered into, under which certain expenditures were promised and paid, with the proviso that all the unpaid obligations of the previous treaties should continue to be barred.
The jurisdictional act of 1920, under which this suit was instituted, stipulated that all claims of whatsoever nature
* * * which have not heretofore been determined by the Court of Claims, may be submitted to the Court of Claims * * * for determination of the amount, if any, due said tribe from the United States under any treaties, agreements, or laws of Congress, or for the misappropriation of any of the funds or lands of said tribe or band or bands thereof, or for the failure of the United States to pay said tribe any money or other property due.
The act further provided that
* * * any payment which may have been made upon any claim so submitted shall not be pleaded as an estop-pel, but may be pleaded as an offset in such suits or actions, and the United States shall be allowed credit for all sums heretofore paid or expended for the benefit of said tribe or any band thereof.
To allow the plaintiffs to recover annuities under abrogated treaties and to retain without offset the benefits received under the treaty of 1868 would be- inequitable. To permit the previous treaties and the treaty of 1868 which was entered into in lieu thereof, and which contained a provision that payments under previous treaties were barred, to nevertheless run concurrently, and to give full payment under all the treaties, would constitute double payment. But for the uprising in 1862, with the consequent cancellation of the previous treaties, the provision for payment under the treaty of 1868 would probably never have been made. Hence, to authorize full payment under the revitalized pre *84 vious treaties, plus full payment under tbe substituted treaty of 1868 covering tbe same period, would be equivalent to allowing a man to take advantage of bis own wrong. Neither tbe history of the treaties nor tbe language of tbe act of 1920 justifies such an interpretation.
As shown by the special acts, Congress evidently desired that the plaintiffs should have the benefit of the treaties that promised the larger benefits, but not both these and the treaty of 1868 at the same time.
A generous Congress has restored the benefits of treaties that had been annulled, and provided in the act of restoration that the United States should be allowed credit for all sums paid or expended for the benefit of the plaintiff tribe. It is equitable that the payments made-under the treaty of 1868 in lieu of the forfeited annuities should be recognized as a just offset in the general accounting.
It follows that plaintiffs’ petition must be dismissed, and it is so ordered.
Madden, Judge; Whitaker, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.

 Medawakanton Indians et al. v. United States, 57 C. Cls. 357, 371, 379.

 Stoll v. Gottlieb, 305 U. S. 165; Lambert v. Central Bank of Oakland, 85 Fed. (2d), 954, certiorari denied 300 U. S. 658; United States v. California & Oregon Land Co., 192 U. S. 355.