**Application of MAR–TEX REALIZATION CORPORATION.**

**Matter of MAR–TEX OIL CO.**

No. 83206.

District Court, S. D. New York.

Feb. 14, 1944.

Milbank, Tweed & Hope, of New York City (John A. Kelly and Thomas P. Farley, both of New York City, of counsel), for Mar-Tex Realization Corporation.

Meyer Dvorkin, of New York City (Julius Lerner, of New York City, of counsel), for Erwin S. Wolfson.

COXE, District Judge.

This is a motion by the petitioner, Mar-Tex Realization Corporation, successor through reorganization to the Mar-Tex Oil Company, the above named debtor, for an order staying one Erwin S. Wolfson from further proceedings in connection with the prosecution of an action instituted by him in the New York Supreme Court, New York County, pursuant to the orders and decrees of the United States District Court for the Northern District of Texas.

The facts are as follows: In September, 1937, Wolfson commenced an action in the New York Supreme Court, New York County, against the Mar-Tex Oil Company, the above named debtor, to recover $12,199.67 on an alleged contract claim. In this action a warrant of attachment was issued, under which a levy was made upon $4,770.34 held in a deposit account in the debtor's name in a New York bank. This sum was thereafter turned over to the sheriff of New York County, and is now being held by his successor, the sheriff of New York City.

Before the action came on for trial, a petition under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., was filed by the Mar-Tex Oil Company in the District Court for the Northern District of Texas, and on November 20, 1940, an order was entered by that court staying further proceedings in connection with the prosecution of the action in the New York Supreme Court "until final decree, or the further order of this court". This order was recognized by the New York Supreme Court, which, on November 25, 1940, stayed the trial of the action.

Thereafter, Wolfson filed a proof of claim in the Chapter X proceedings in the Texas court for the same amount and based on the same facts alleged in the New York action. This claim was heard by a special

594

master appointed by the Texas court, and disallowed. Wolfson then filed exceptions to the master's report disallowing the claim, and these exceptions were overruled by the Texas court.

Wolfson and the sheriff were advised of the action taken by the Texas court, and the sheriff was requested to turn over the fund in his hands to the trustee of the debtor. The sheriff failed to honor this request, and in proceedings thereafter taken by the trustee in the Texas court a turn-over order was entered, which later resulted in the entry of a contempt order against the sheriff by the Texas court. This contempt order was obtained over the, opposition of Wolfson and the sheriff.

On May 1, 1943, the Texas court entered an order in aid of the consummation of the amended plan of reorganization of the debtor, which vested in the petitioner all of the "rights, title and interest" of the debtor and its trustee in the fund held by the sheriff, and authorized the petitioner to take any necessary steps for recovery, but specifically reserved jurisdiction thereof. Pursuant to this order, the trustee made a formal assignment of the fund to the petitioner.

On June 19, 1943, after the approval of a plan of reorganization of the debtor, a final decree was entered by the Texas court closing the estate of the debtor and discharging the trustee. This decree discharged the debtor from all debts and liabilities, and perpetually enjoined and stayed all creditors and claimants from pursuing any proceedings against the debtor based on any claim existing at the time of the filing of the Chapter X petition. It also reserved jurisdiction to take any necessary action with respect to the claim against the sheriff of New York City.

In August, 1943, Wolfson made a motion in the state court to vacate the order of that court of November 25, 1940, staying the trial of the action, to enjoin the sheriff from turning over the funds held under the attachment, and to enjoin the debtor and its successor from taking any steps to enforce the contempt order against the sheriff made by the Texas court. This motion was opposed by the petitioner on a full showing of the above facts, but the motion was granted, and an order was entered vacating the stay, placing the action on the calendar for trial, and granting leave to the debtor to interpose a supple-

mental answer setting up the final decree of the Texas court as a defense. No supplemental answer as permitted by this order has been served.

Thereafter, a motion was made by the petitioner in the state court to vacate the warrant of attachment issued in 1937, or, in the alternative, for leave to intervene in the action for the purpose of setting up the final decree of the Texas court as a defense. This motion has recently been denied by the state court.

The fund of $4,770.34 in the hands of the sheriff constituted property of the debtor, which passed to the trustee, and over which the Texas court had exclusive jurisdiction. Bankruptcy Act § 111, 11 U. S.C.A. § 511. The Texas court so found when it entered the order directing the sheriff to turn the fund over to the trustee. There was no appeal from this order. Cf. In re Standard Gas & Electric Co., 3 Cir., 139 F.2d 149.

■ Moreover, the turn-over order followed the disallowance of Wolfson's claim by the Texas court; and it was in turn followed by the contempt order against the sheriff. Wolfson appeared in the proceeding relating to his claim. He also appeared with the sheriff in opposition to the application to punish the sheriff for contempt. No appeal was taken from either of these orders. There was thus a final adjudication by the Texas court not only that Wolfson had no claim against the debtor, but that the funds in the hands of the sheriff belonged to the estate. Neither Wolfson nor the sheriff can now be heard to say that the Texas court lacked jurisdiction to make the orders. Cf. Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104.

■ The plan of reorganization provided for the transfer of the fund in the hands of the sheriff to the petitioner. This plan upon confirmation was binding on Wolfson and the sheriff. Bankruptcy Act § 224(1), 11 U.S.C.A. § 624(1). Cf. In re Greenpoint Metallic Bed Co., 2 Cir., 113 F.2d 881. The order of May 1, 1943, in aid of the consummation of the plan specifically vested title to the fund in the petitioner, and authorized it to take any necessary steps for recovery. This was a proper order, Bankruptcy Act § 224(2), 11 U.S.C.A. § 624(2), and it freed the fund from all claims and interests of creditors, Bankruptcy Act § 226, 11 U.S.C.A. § 626.

The stay of November 20, 1940, which, by its terms, was to continue only until final decree, was superseded by the perpetual general stay in the final decree of June 19, 1943. This general stay was authorized by Section 228(3) of the Bankruptcy Act, 11 U.S.C.A. § 628(3).

The petitioner did not lose its right to proceed in this court by first applying for relief in the state court. The present proceeding is in reality brought in the right of the trustee, and the Texas court expressly reserved jurisdiction to adjudicate the claim against the sheriff. This is an exclusive jurisdiction, which may be protected by injunction under the general equity powers of the court. Continental Ill. Nat. Bank & Trust Co. v. Chicago, Rock Island & P. Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110; cf. Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195.

The motion of the petitioner to stay Wolfson from further proceedings in his action in the New York Supreme Court is granted.