**Decided May 25, 1982**

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

LOCAL TRIAL DIVISION

SANTIAGO BABAUTA,                )    CIVIL ACTION NO. 82-16
                                 )
          Plaintiff,             )
                                 )
     vs.                         )         DECISION
                                 )
TRUST TERRITORY OF THE           )
PACIFIC ISLANDS, PATRICK         )
DOWAI and PEDRO ANGUI,           )
                                 )
          Defendants.            )
_____)

## DECISION

Plaint·ff seeks to reduce a final judgment of the Trust
Territory High Court to a judgment of this Court. He moves
for judgment on the pleadings against defendant Trust Terri-
tory of the Pacific Islands (TTPI). For reasons which fol-
low, the Court grants the motion.

I.

In 1977 plaintiff sued defendants in the Trust Terri-
tory High Court. The Trial Division issued judgment for him
in 1979. The Appellate Division affirmed in 1981. Under
the judgment, defendants presently owe plaintiff $89,243.52
in damages, accrued 6% annual interest, and costs.[1]

- - - - - - - -

[1] The judgment against all defendants jointly and severally
is for $52,000 compensatory damages. $12,232.11 in inte-
rest on that sum has accrued as of March 26, 1982. The
judgment also grants costs of $306.75 against all defen-
dants. Defendants Dowai and Angui each are additionally
liable for $10,000 punitive damages and $2,352.33 in
accrued interest.

292

The TTPI contends that the Court lacks subject matter and personal jurisdiction. It specifically argues that:

1. This cause is not an original action within this Court's § 1694a(b) jurisdiction, but rather a case pending before the High Court on the effective date of the Northern Mariana Islands (NMI) Constitution (January 9, 1978); Under Section 4 of the NMI Constitution's Transitional Matters Schedule,[2] jurisdiction therefore rests with the High Court rather than with this Court;

2. Only the High Court has jurisdiction over actions involving the TTPI;[3]

The TTPI further urges that the Court should decline jurisdiction if jurisdiction exists. It submits that, under 6 T.T.C. § 251(4),[4] a judgment against the TTPI is

_ _ _ _ _ _ _ _ _

[2] Section 4 of the NMI Constitution's Transitional Matters Schedule states in relevant section:

> Civil and criminal matters pending before the High Court of the Trust Territory of the Pacific Islands on the effective date of the Constitution that involve matters within the jurisdiction of the Commonwealth trial court of (sic) the United States District Court for the Northern Mariana Islands shall remain within the jurisdiction of the High Court until finally decided.

[3] The TTPI does not extensively brief this position. It incorporates by reference its unsuccessful jurisdictional arguments in Sablan Construction Co. v. TTPI, 526 F. Supp. 135 (D.N.M.I. App. Div. 1981) and Castro v. NMI and TTPI, CV 79-50, Memorandum Decision (Nov. 13, 1981).

[4] Title 6 T.T.C. § 251(4) states in relevant section that judgments against the TTPI "shall be paid from such funds as may be appropriated by the Congress of Micronesia or the Congress of the United States for that purpose." Section 251(4) is part of NMI law to the extent that it is consistent with the United States Constitution, the Covenant, other federal laws, and NMI statutes. Covenant § 505, P.L. 94-241, 90 Stat. 263, 269, 48 U.S.C. § 1681 note (1976). The United States Congress now is the only existing legislative source of judgment funds. Interior Department Secretarial Order No. 3027, 43 Fed. Reg. 49858 (1978) dissolved the Congress of Micronesia. During oral argument, the TTPI conceded that this Court could compel the TTPI to submit judgments to Congress for payment.

enforceable by Trust Territory courts only if the United States Congress appropriates funds to pay the judgment. Because Congress has not specifically appropriated money for plaintiff's judgment, the TTPI states that judgment is an unenforceable conditional judgment within Restatement, Second, Conflicts of Law § 111. [5] It reasons that the Court should decline jurisdiction as a matter of comity to avoid giving plaintiff's judgment any greater effect than the judgment has in Trust Territory courts.

## II.

On a motion for judgment on the pleadings, the court takes as true non-movant's factual allegations. Austad v. U.S., 386 F. 2d 147, (9th Cir. 1967); (Wright & Miller). The court does not deem admitted non-movant's legal conclusions or characterizations. Tyco Laboratories v. Cutler-Hammer, Inc., 490 F. Supp. 1, 4 (S.D.N.Y. 1980); Wright & Miller, supra, at 692. The court grants the motion only if movant is clearly entitled to prevail as a matter of law. Austad, 386 F. 2d at 149.

## III.

In this instance, plaintiff is clearly entitled to prevail. The cause is an original action for the recognition of a judgment from another jurisdiction. That cause falls within this Court's jurisdiction under 48 U.S.C. § 1694a(b). The TTPI's jurisdictional defenses are unmeritorious. Since

- - - - - - - - -

[5] Restatement, Second, Conflicts of Laws § 111 provides:

A judgment will not be enforced in other states if the judgment is not subject to enforcement in the state of rendition because the judgment is subject to a condition not yet performed.

the TTPI admits the substance and the finality of the judgment, the pleadings present no material factual issue. Judgment on the pleadings for plaintiff is therefore appropriate.

## A.

The TTPI misconceives this case as an action pending before the High Court on the effective date of the NMI Constitution. The action pending against the TTPI on that date was plaintiff's claim filed in 1977. As the TTPI concedes, that action terminated in a final judgment for plaintiff. Thus, the action was "finally decided" within the meaning of Section 4 of the NMI Constitution's Transitional Matters Schedule.[6] An action on a final judgment is a distinct cause of action from the initial claim which results in the judgment. Restatement of Judgments § 47 and comments a, e, and f; see, e.g., Yergensen v. Ford, 16 Utah 2d. 397, 402 P. 2d 696, 697-698 (Utah 1965).

Plaintiff's suit thus is an original action for recognition of his High Court judgment. The cause arises in the NMI under local law and is not committed by local law to the jurisdiction of NMI courts. Therefore, it is a matter over which the Court has jurisdiction pursuant to 48 U.S.C. § 1649a(b). See Sablan Construction Co. v. TTPI, 526 F. Supp. 135, 138-139 (D.N.M.I. App. Div. 1981).

For the reasons stated in Sablan Construction Co. and Castro v. NMI and TTPI, CV 79-50, Memorandum Decision (Nov. 13, 1981), the Court again rejects the argument that jurisdiction over actions involving the TTPI rests with the High Court rather than with this Court. Further, as noted in Castro, the argument is puzzling as well as erroneous in light of Sablan v. Sablan, CV APP No. 331 (H.C. App. Div. Oct. 1, 1980).

------------

[6] See note 2, supra.

In _Sablan_, the High Court squarely recognized that the Covenant and the NMI Constitution terminated its judicial authority over original actions within the NMI as of January 9, 1978. In 1979 ·the Trial Division attempted to enforce a final divorce decree which it had rendered on Saipan in 1977. The Appellate Division vacated the orders below. It ruled that the High Court lacks jurisdiction after the effective date of the NMI Constitution to enforce its final judgments or to act on post-judgment motions. _Sablan_ at 2, 4. The court clearly based its holding upon the rationale that the NMI remained within the High Court's jurisdiction only _until_ that date. _Id._ at 2. That rationale extends to actions against the TTPI.

The Covenant creates no legal basis for High Court jurisdiction. The TTPI has not suggested here that the Covenant does, but the argument was implicit in one of the TTPI's contentions in _Sablan Construction_. The contention was that, under 6 T.T.C. § 251, the High Court has exclusive jurisdiction over actions involving the TTPI. The TTPI's rationale appeared to be predicated upon Covenant § 505.[7] Although § 505 admittedly continues pre-existing Trust Territory laws, it does so only to the extent that those laws are consistent with the Covenant. _Sablan Construction_ recognized the inconsistency of § 251 with the reallocation of judicial authority mandated by the Covenant.

- - - - - - - - -

[7] Covenant § 505 states:

> The laws of the Trust Territory of the Pacific Islands, of the Mariana Islands District and its local municipalities, and all other Executive and District orders of a local nature applicable to the Northern Mariana Islands on the effective date of this Section and not inconsistent with this Covenant or with those provisions of the Constitution, treaties or laws of the United States applicable to the Northern Mariana Islands will remain in force and effect until and unless altered by the Government of the Northern Mariana Islands.

The TTPI suggests that plaintiff is prevented from filing his complaint by Abrams v. Abrams, CV App. No. 79-01 (D.N.M.I. App. Div. Sept. 17, 1979). Its reliance upon Abrams is misplaced. Abrams must be considered within the context of its labyrinthine procedural history. The case involved litigation before the trial and appellate divisions of both this Court and the High Court. In CV App. No. 79-01, the Court dismissed an appeal from a High Court appellate division order. The High Court's order had dismissed an attempted appeal from the High Court's trial division to this Court's appellate division. Seeking a divorce decree modification, the prospective appellant had initiated the High Court trial division proceedings after the effective date of the NMI Constitution. See CV App. No. 79-01 at 2. She thus invoked, rather than contested, the High Court's presumed jurisdiction. Therefore, under Stoll v. Gottlieb, 305 U.S. 165, 172-173, 83 L. Ed. 104, 59 S. Ct. 134, 137-138, reh. denied 305 U.S. 675, 83 L. Ed. 407, 59 S. Ct. 250 (1938), she was precluded from collaterally attacking the High Court's jurisdiction before this Court.[8/] See, e.g.-Abrams v. Sailboat Cutter Slow Dancer, CV 78-2, Decision and Order at 6-7 (D.N.M.I. Sept. 7, 1979). The Abrams appellate decision stands only for the proposition that this Court's appellate division lacks jurisdiction under such circumstances to review High Court appellate decisions. Abrams does not support the proposition that this Court lacks § 1694a(b) jurisdiction over judgment recognition actions arising after the effective date of the NMI Constitution. The Court candidly acknowledges that Abrams contains dicta disclaiming the effect of the Covenant and the NMI Constitution upon the High Court's jurisdiction. See Abrams, CV App. No. 79-01 at 7. Those dicta are incompatible with Sablan Construction, Castro, this Court's pre-Abrams ruling

- - - - - - - - - -

[8/] The Supreme Court recently re-affirmed Stoll in Underwriters National Assurance Co. v. North Carolina Life & Accident & Health Insurance Guaranty Assoc., No. 80-1496, slip op. at 14 n. 13 (U.S. March 24, 1982).

in M.I.A.A. v. T.T.P.I.[9]/ and the High Court's Sablan opinion. The Court accordingly disapproves the Abrams dicta and similar statements or holdings in other cases.

B.

Because the High Court lacks jurisdiction in this case, it would be unwise for this Court to decline jurisdiction as a matter of comity.  Under the comity doctrine, one court may defer action on a cause properly within its jurisdiction until another jurisdiction's courts with concurrent powers, and already cognizant of the litigation, have an opportunity to pass on the matter.  Rose v. Lundy, No. 80-846, slip op. at 9 (U.S. March 3, 1982); Fay v. Noia, 372 U.S. 391, 420, 9 L. Ed. 2d 837, 83 S. Ct., 822, 838 (1963).  Comity is not a rule of law; it is a principle of practical convenience through which courts minimize interference with each other's jurisdiction and avoid confusion and conflicting orders. Greenhouse v. Hargrave, 509 P. 2d 1360, 1363 (Okl. 1973). Actions arising within the NMI after the effective date of the NMI Constitution are matters over which the High Court has no jurisdiction.  The requisite policy basis for deferring this Court's jurisdiction is not present.

It is unnecessary to address the TTPI's arguments against the enforceability of plaintiff's judgment.  The question is whether the Court has jurisdiction to recognize the judgment by reducing it to a district court judgment. The judgment's enforceability is an independent issue[10]/ which does not justify declining jurisdiction, and which the Court will reach only when it is essential to do so.

— — — — — — — — —

[9]/ CV 78-02, Order at 2 (D.N.M.I. Tr. Div. Oct. 5, 1978), partially overruled on other grounds, Sablan Construction, 526 F. Supp. at 138.

[10]/ See, e.g., Restatement, Second, Conflict of Law, Introductory Note, at 277.

Because the pleadings present no dispute concerning the substance and the finality of plaintiff's prior judgment, plaintiff is clearly entitled to judgment here. The Court need not, and accordingly does not, decide whether recognition of the judgment is specifically mandated by the full faith and credit provisions of the United States Constitution and 28 U.S.C. § 1738,[11] or by sections 93 or 98 of the Restate-statement, Second, Conflicts of Laws.[12] Under each of the above, recognition of a foreign judgment consists of giving the judgment the same finality and conclusive effect as to parties, issues, and subject matter which the judgment has in the rendering jurisdiction. Thomas v. Washington Gas Light Co., 448 U.S. 261, 270, 65 L. Ed. 2d 757, 100 S. Ct. 2647, 2655 (1980); Restatement, Second, Conflicts of Laws, § 93, comment b.

- - - - - - - - - -

[11] Article IV, Section 1 of the United States Constitution, the Full Faith and Credit Clause, applies within the NMI. Covenant § 501, 48 U.S.C. § 1681 note. Title 28 U.S.C. § 1738 implements that clause. Because section 1738 applies generally to the fifty states and to Guam, it also applies within the NMI. Id. § 502(2), 48 U.S.C. § 1681 note.

[12] Restatement, Second, Conflicts of Laws § 93 provides:

> A valid judgment rendered in one State of the United States must be recognized in a sister State, except as stated in § 103.

Section 93 applies to the several states and United States territories or possessions. Id., comment a.

Section 98 states:

> A valid judgment rendered in a foreign nation after a fair trial in a contested proceeding will be recognized in the United States so far as the immediate parties and underlying cause of action are concerned.

The Court GRANTS plaintiff's motion for judgment on the pleadings. It shall enter an appropriate ORDER in accordance with this decision.

DATED this 25th day of May, 1982.

ALFRED LAURETA
United States District Judge