In re LIONEL CORPORATION, Lionel Leisure, Inc., Consolidated Toy Company, Debtors.

The LIONEL CORPORATION, Lionel Leisure, Inc., Plaintiff,

v.

LOZIER STORE FIXTURES, INC., Defendant.

Bankruptcy No. 82 B 10318.
Adv. No. 82 5769A.

United States Bankruptcy Court, S.D. New York.

April 19, 1983.

Olwine, Connelly, Chase, O'Donnell & Weyher, and Angel & Frankel, New York City, for debtor.

Bruce Roswick, New York City, Wald, Knoll, Freedman, Chapman & Bendes, Oakland, Cal., for Lozier Store Fixtures, Inc.

Rosenman, Colin, Freund, Lewis & Cohen, New York City, for Northwest Plaza Associates.

Weil, Gotshal & Manges, New York City, for Creditors' Committee.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, for Equity Security Holders' Committee.

EDWARD J. RYAN, Bankruptcy Judge.

On February 19, 1982, the Lionel Corporation and Lionel Leisure, Inc. (jointly "Lionel") filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. Lionel continued in the management of its business as debtor in possession pursuant to sections 1107 and 1108 of the Code.

On August 19, 1981, six months prior to the bankruptcy petition, Lionel entered into a sublease agreement with J.C. Penney Company, Inc. ("Penney"), whereby Lionel subleased four retail store properties in the state of California from Penney.[1]

In September, 1981 Lionel entered into several purchase orders with Lozier Store Fixtures, Inc. ("Lozier") for the purchase and installation of certain trade fixtures, consisting primarily of shelving and checkout counters, for each of these locations. Lozier completed installation of the fixtures during the fall of 1981. However, before payment was made to Lozier, Lionel filed its Chapter 11 petition.

On March 3, 1982, Lozier filed mechanic's lien notices against each of the four subleased properties for the work performed and materials supplied in connection with the delivery and installation of the fixtures purchased by Lionel. On May 27, 1982, Lozier commenced four independent actions in the California state courts to foreclose the mechanic's liens against the owners of the properties.

On the same day, this court granted Lionel the authority to enter into an agreement with Penney pursuant to which Lionel would surrender the subleases and remove the trade fixtures to several of its other stores, and commence an action against Lozier to discharge, vacate, and cancel its mechanic's liens. In return, Penney was permitted to interpose certain damage claims in Lionel's Chapter 11 proceedings.

On June 14, 1982, Lionel commenced this adversary proceeding, pursuant to its agreement with Penney, to invalidate the me-

1. The locations and the fee owners of the California properties are described as follows:

| | Location | Owner |
|---|---|---|
| a. | 180 El Camino Real South San Francisco, CA | Luis de Davidsohn and Susana Distel de Davidsohn |
| b. | 150 East Camino Real Sunnyvale, CA | Beneficial Standard Life Insurance Company and Margaret E. Duckgeishel, a/k/a Margaret E. Reed |
| c. | 5789 Mowry Avenue Newark, CA | American Property Investors IV |
| d. | 555 Foresta Boulevard San Leandro, CA | San Leandro Grastoke, Ltd. |

chanic's liens on the ground that under California law the trade fixtures were not permanent works of improvement to which a valid mechanic's lien may attach.

However, on June 28, 1982, the Supreme Court decided *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("*Marathon*"), in which it declared 28 U.S.C. § 1471 unconstitutional.[2]

Thereafter, on August 20, 1982, Lozier noticed a motion for an order dismissing the adversary proceeding, alleging that this court no longer possesses subject matter jurisdiction because of *Marathon.* Alternatively, Lozier alleged that Lionel has no real interest in the matters alleged in the complaint; that the matter should be transferred to the United States Bankruptcy Court for the Northern District of California, pursuant to 28 U.S.C. § 1475, in the interests of justice and for the convenience of the parties; that Lionel has failed to join necessary parties pursuant to Rule 712; or, that this court should abstain from hearing and determining this adversary proceeding pursuant to 28 U.S.C. § 1471(d), in the interests of justice.

On October 28, 1982, Lionel noticed a cross-motion for an order pursuant to 11 U.S.C. § 105(a), holding Lozier in contempt of court by reason of its commencement and prosecution of the state actions in violation of the automatic stay provisions of 11 U.S.C. § 362.

Lozier responded to that cross-motion alleging that the automatic stay provisions of § 362 do not prevent Lozier from prosecuting the state court actions against parties totally unrelated to the bankruptcy proceeding and against real property no longer in Lionel's possession.

In light of the Supreme Court's decision in *Marathon,* this court is of the opinion that it does not have jurisdiction over the subject matter of this adversary proceeding. Therefore, Lozier's motion to dismiss must be granted, and Lionel's cross-motion for contempt sanctions must be denied.

In *Marathon* the Supreme Court held, in a plurality opinion, that 28 U.S.C. § 1471 confers an unconstitutionally broad grant of jurisdiction on the bankruptcy courts in violation of Article III of the United States Constitution. As recognized by the Chief Justice in a separate dissenting opinion, the plurality opinion stands for

> "the proposition ... that a 'traditional' state common-law action, not made subject to a federal Rule of Decision and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an 'Article III' court if it is to be heard by any court or agency of the United States."

*Marathon, supra,* 102 S.Ct. at 2882.

■ The effect of *Marathon* is that the bankruptcy court has been divested of certain jurisdiction which it previously exercised. However, this court retains the power to determine, in the first instance, whether it has jurisdiction to hear the particular case pending before it.

■ It is a basic principle of the American judicial system that though all federal courts are courts of limited jurisdiction they have the authority, when parties are brought before them, to determine whether or not they have jurisdiction to entertain the case:

> "A court does not have the power, by judicial fiat, to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators. There must be admitted, however, a pow-

---

2. 28 U.S.C. § 1471 provides in pertinent part:

a. Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

b. Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

c. The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

er to interpret the language of the jurisdictional instrument and its application to an issue before the court. Where adverse parties appear, a court must have the power to determine whether or not it has jurisdiction of the person of a litigant . . . . Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter."

*Stoll v. Gottlieb,* 305 U.S. 165 (1938) at 171, 59 S.Ct. 134, at 137, 83 L.Ed. 104. *See, also, Chicot County Dist. v. Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1939); *Vallely v. Northern Fire Ins. Co.,* 254 U.S. 348, 41 S.Ct. 116, 65 L.Ed. 297 (1920).

■ This rule applies equally to the bankruptcy courts. The bankruptcy court has the authority to pass upon its own jurisdiction, and its determination regarding jurisdiction, while open to direct review on appeal, is res judicata in any collateral action. *Chicot County Dist. v. Bank, supra; Stoll v. Gottlieb, supra.*

Prior to *Marathon,* this court had jurisdiction over all civil proceedings arising under or related to cases under title 11. 28 U.S.C. § 1471(b). We therefore had the jurisdiction to authorize and approve of the agreement entered into between Lionel and Penney. However, *Marathon* now prohibits this court from exercising the jurisdiction necessary to effectuate the agreement.

■ This adversary proceeding, which centers on whether certain trade fixtures constitute the proper subject of a mechanic's lien under California law, involves rights created entirely by state law, independent of the reorganization petition. The issue of the validity of these mechanic's liens, while potentially affecting Penney's claim against Lionel, is peripheral at best to the administration of Lionel's bankruptcy case. The issue is at most a "related to" matter under the bankruptcy laws. Therefore, absent the consent of the parties, this court is without power to interfere with such a traditional state law action as the determination of the validity of a mechanic's lien. *In re Cascade Oil Co., Inc.,* 22 B.R. 348 (Bktcy S.D.N.Y.1982); *In re The Na-*

*tional Sugar Refining Company,* 22 B.R. 279 (Bktcy S.D.N.Y.1982).

■ For these reasons, the automatic stay provisions of 11 U.S.C. § 362 must be held not to apply to Lozier's actions in perfecting its mechanic's liens against the owners of the California properties, where Lionel has not been made a party to the action and is no longer in possession of the real property in question.

The motion to dismiss for lack of subject matter jurisdiction is granted.

The cross-motion to hold Lozier in contempt for violation of the automatic stay provision of 11 U.S.C. § 362 is denied. It is so ordered.