**In re Husam A. ZAYED, Debtor.**

**No. 6:03 BK 01460.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

March 9, 2006.

Douglas W. Neway, Orlando, FL, for Debtor.

## MEMORANDUM OPINION DENYING MOTION FOR AUTHORITY TO KEEP 2004 INCOME TAX REFUND

KAREN S. JENNEMANN, Bankruptcy Judge.

In 2005, Husam Zayed, the Chapter 13 debtor, received a refund associated with his 2004 federal income tax return in the amount of $3,197.72. In his Motion for Authority to Keep 2004 Income Tax Refund (Doc. No. 32), the debtor now asks to keep these funds contrary to the requirement contained in the Order Confirming Chapter 13 Plan (Doc. No. 27). Typically, as is the case here, Chapter 13 debtors are required in the order confirming their plans to turnover all federal income tax refunds received during a Chapter 13 case.

The Chapter 13 trustee opposes the debtor's request, asserting that the debtor has been less than candid in disclosing additional and substantial income he has earned during this case. This income, if timely disclosed, would have significantly increased distributions to the debtor's creditors. The Court agrees that the debtor has failed to demonstrate the candor needed to justify any exception that would allow him to retain his tax refund.

The debtor filed this Chapter 13 case on February 13, 2003. At that time, he had recently started a new job and was in the probationary period. His Schedule I, listing his current income, appropriately included only the income he earned during these early weeks on the job. He listed monthly income of $3,167.25.

However, the very next month, March 2003, the debtor was released from probation and hired on a permanent basis. Upon being promoted to a permanent employee, the debtor received a sizable increase in his income, from an annual amount of $38,000 to approximately $47,000 per year. As such, the debtor received a $9,000 per year increase in his income within 30 days of filing his original Schedule I.

The debtor has never disclosed this extra income to the Chapter 13 trustee or his creditors. For example, the debtor's 2003 tax return indicates that he earned $47,216 in 2003. (Debtor's Ex. No. 8.) In 2004, the debtor earned $47,898. (Debtor's Ex. No. 9.) None of the excess income was turned over to the trustee or paid to his creditors.

The debtor did, very reluctantly and belatedly,[1] turn over his 2003 tax refund in the amount of $1,987. (Trustee's Ex. No. 5.) Before doing so, however, the debtor, similar to his current effort, attempted to persuade the Chapter 13 trustee to allow

---

1. The debtor received his 2003 refund in April 2004. He did not turn it over to the Chapter 13 trustee until December 2004, or later.

him to keep his 2003 tax refund. To support his argument, the debtor, on December 3, 2004, signed and filed Amended Schedules I and J, supposedly listing his revised income and expenses (Doc. No. 29).

The debtor's amended schedules were false, insofar as he failed to reflect his correct and substantially increased income. Rather, he listed his income in the same amount listed on his original Schedule I (Doc. No. 1) as that earned during the first three weeks of his case, the much lesser amount of $3,167.25 per month. The debtor claimed increased expenses while failing to disclose increased income.

Now, the debtor seeks to keep his 2004 tax refund due to the substantial damage to his home suffered as a result of hurricanes passing through the Orlando area. The debtor estimates that the damages totaled at least $55,000. Initially, the Court finds that the debtor's estimate is overstated. The estimate contains some noticeable duplications. The damage estimate also includes some expenses, such as food costs, that the debtor would have had to pay, regardless of any hurricane damage.

There is no dispute, however, that the debtor's home encountered substantial hurricane damage. Indeed, the debtor received compensation from his insurance company, in the amount of $45,281.44,[2] to pay for these losses. (Debtor's Ex. No. 1.) The debtor contends that he needs his 2004 tax refund to pay for additional, uncompensated losses.

Specifically, in 2004, the debtor was entitled to receive a tax refund of $4,288. (Debtor's Ex. No. 9.) The Internal Revenue Service retained approximately $1,100 of that amount. (Debtor's Ex. No. 10.) The debtor actually received a refund of

$3,197.72. This is the amount the debtor wants to keep.

The Chapter 13 trustee believes these funds should be turned over to pay the debtor's unsecured creditors. The total amount due by the debtor to his unsecured creditors is approximately $12,000. Although his confirmed Chapter 13 Plan provides for a payment of approximately ten percent to these unsecured creditors, this additional $3,100 would go a long way to paying a substantial portion of the unsecured debts.

▪ Further, the Order Confirming Chapter 13 Plan (Doc. No. 27), entered by the Court on October 15, 2003, provides, "All future refunds from the Internal Revenue Service shall be turned over to the Chapter 13 Standing Trustee for distribution to the unsecured creditors." The debtor did not object to this language in the order. The debtor did not appeal the order, which long ago became final. Pursuant to Section 1327(a) of the Bankruptcy Code,[3] which provides that "the provisions of a confirmed plan bind the debtor," the debtor is bound by the terms of the confirmation order, including the requirement to turnover his tax refunds for administration in this case. "Confirmation of a Chapter 13 plan by a bankruptcy court of competent jurisdiction, in accordance with the procedural requirements of notice and hearing of confirmation 'is given the same effect as any district court's final judgment on the merits.'" *Universal Am. Mort. Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 829–30 (11th Cir.2003) (*citing In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir.1990)) (*citing Stoll v. Gottlieb*, 305 U.S. 165, 170–71, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938)). Thus, Bankruptcy Code Section 1327 gives res judicata effect to a con-

---

2. The debtor's wife also received additional insurance compensation of $6,000.

3. Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

firmed Chapter 13 plan. *Bateman,* 331 F.3d at 829–30; *In re Starling,* 251 B.R. 908 (Bankr.S.D.Fla.2000) ("The binding effect of confirmation of the plan is essential in serving the objective of the confirmation process, which is to achieve finality.") (citations omitted).

██ Here, the debtor would like to reap the benefits of a Chapter 13 case without being burdened with the attendant responsibilities. He would like to extend payments to his secured creditors over 36 months, pay his unsecured creditors about ten percent of the amount due them, and receive a discharge for the balance due. He would like to receive these benefits without reporting his additional income, which increased almost immediately after he filed this case. The debtor could have disclosed this additional income at his confirmation hearing, held on September 16, 2003, yet again, he did not. He could have filed a truthful Amended Schedule I on December 3, 2004, when he was trying to persuade the Chapter 13 trustee to allow him to keep his 2003 federal tax refund. He did not. The debtor simply is not candid in the information he supplies to the Chapter 13 trustee or to the Court.

Nevertheless, the debtor now wants the Court to believe that he needs to keep his 2004 refund to pay for un-reimbursed hurricane damage. First, the Court does not accept the debtor's estimate of the outstanding damages. As stated above, the damages are overstated due to overt duplication of some expenses and an attempt to claim amounts, such as food costs, that cannot be considered a part of the hurricane loss.

However, even assuming some part of the damages listed by the debtor was not paid by his insurance company, the Court would find that his excess income, previously unreported to the Court, the trustee, or his creditors is more than ample to cover any shortfall. For three years, the debtor has earned an extra $9,000 per year which was not paid to his creditors or to the Chapter 13 trustee. The debtor cannot expect this Court to allow him to keep his 2004 refund of $3,197, when the debtor has kept $27,000 in prior income without disclosure. Even after accounting for federal taxes and other employer deductions, the debtor certainly has received undisclosed income that greatly exceeds the amount of the tax refund he hopes to keep. The debtor is not credible, simply wants to avoid the burdens of this Chapter 13 case, and has failed to demonstrate any legitimate reason to keep his 2004 refund.

Accordingly, the debtor's Motion for Authority to Keep 2004 Income Tax Refund is denied. The debtor is directed to turnover $3,197.72 to the Chapter 13 trustee within 30 days of the entry of this order. Failure to timely comply with this directive will result in the dismissal of this case without further notice or hearing. A separate order consistent with this Memorandum Opinion shall be entered.