944 F.2d 905
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ames Anthony SWEETON, et al., Plaintiffs-Appellees-Cross-Appellants,
v.
Robert BROWN, Jr., et al., Defendants-Appellants-Cross-Appellees.
 Nos. 90-1800, 90-1807.
 United States Court of Appeals, Sixth Circuit.
 Sept. 17, 1991.
 
 Before DAVID A. NELSON and RALPH B. GUY, Jr., Circuit Judges, and HIGGINS, District Judge*.
 HIGGINS, District Judge.
 The defendants (appellants) appeal and the plaintiffs (appellees) cross-appeal the district court's order denying the defendants' motion to dismiss and partially modifying a consent decree issued in 1981. For the reasons that follow, we affirm in part, reverse in part and remand.
 I. Background
 This appeal arises out of a final consent judgment entered into between the State of Michigan Department of Corrections and a class of inmates and approved by the district court on August 28, 1981. This action was brought in September 1977 by a class of inmates within the jurisdiction of the State of Michigan Department of Corrections (MDOC), whose parole eligibility is determined by the State of Michigan Parole Board. The defendants/appellants are the director of the MDOC and the members of the Michigan Parole Board. The suit challenges the practices of the MDOC and the Parole Board concerning the timeliness of hearings and decisions and the lack of guidelines in the parole decision-making process. This action does not concern the actual granting of parole, but only the procedures in making and implementing parole decisions. The inmate class asserts that the MDOC and Parole Board have violated their rights to due process under the Fourteenth Amendment to the Constitution of the United States.
 A review of the history of this action is helpful in understanding the lower court's rulings concerning the consent decree and the most recent ruling granting a modification.
 1977-1987
 The complaint was filed by the inmate class on September 15, 1977, addressing the issues discussed above.
 In March 1978, the appellants filed their first motion to dismiss or, in the alternative, for summary judgment for failure to state a federally cognizable cause of action. In August 1978, the district court (Feikens, J.) granted the appellants' motion to dismiss as to the claims raised under the Constitution of the United States, but denied the alternative motion as to the claim that the State of Michigan was not complying with its own statutes and regulations when deciding whether to grant parole. In granting the motion, the lower court held that the Supreme Court of the United States and the Sixth Circuit Court of Appeals had previously established that the requirements of due process are not applicable to parole release hearings. Accordingly, the court dismissed the appellees' claims that the procedures employed by the State of Michigan violated their rights to due process under the Constitution of the United States. Therefore, the only issue that the court left open was whether there arose a state-created liberty interest by way of statutes, rules or procedures that would entitle the appellee class to due process protections. The appellee class did not appeal this ruling.
 In October 1979, the appellants filed another motion to dismiss or, in the alternative, a motion for abstention order. The appellants argued that the issues presented in the action were dependent upon a judicial interpretation of state statutes, rules, policies and regulations, which are all matters more properly within the domain of the state courts. Alternatively, the appellants asserted that the district court should abstain from ruling in the action, pending resolution of the issues by state tribunals. In March 1980, after the case was subsequently reassigned to the Honorable Anna Diggs Taylor upon her appointment to the federal bench, the court heard oral argument and denied the appellants' motion.
 The parties stipulated to a series of partial consent judgments in March and April 1980. These partial consent judgments were consolidated and, after notice to all class members, the district court approved a final partial consent judgment in December 1980.
 Thereafter, cross-motions for summary judgment were filed concerning the appellees' access to their MDOC records. These claims were resolved in the appellees' favor by the court's order dated March 31, 1981. In this order and opinion, many of the due process issues that the appellants presently raise are addressed. The district court stated:
 Most importantly, the law of this case, as formulated by Judge Feikens more than two years ago when this litigation was on his docket, is that the existence of state statutes, regulations and policies regarding the parole system as a whole impart independent liberty interests to those inmates participating in the system. (emphasis in original).
 The appellants appealed the above ruling. On August 28, 1981, the court signed a final order approving a final consent judgment. This final consent judgment was a consolidation of the earlier final partial consent judgment, the court's March 31, 1981, order and stipulations of the parties. Also on August 28, 1981, the court amended its order of March 31, 1981. In December 1981, the appellants dismissed their appeal because the terms of the final consent judgment were satisfactory to all parties and the basis for their appeal no longer existed.
 The final consent decree provided for a monitoring period of thirty months, which the court later extended until December 1984. The monitoring provision also deals with jurisdiction. Paragraph VIII(L) provides:
 Plaintiffs' participation in monitoring described in this section shall continue for 30 months, unless the Court extends this period for good cause shown. The Court shall retain jurisdiction of this cause for the pendency of this monitoring period, and shall have the power to make further orders consistent with this decree.
 In February 1984, the appellants filed their first motion to vacate the final consent judgment pursuant to Rule 60(b), Fed.R.Civ.P. The appellants claimed, inter alia, that:
 1. the consent judgment was based exclusively on state law and thus the lower court lacked jurisdiction to enter it;
 2. prior to entering the 1981 judgment, the lower court did not have a full opportunity to review the impact of the Supreme Court's 1979 decision in Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); and
 3. the consent judgment should be vacated because of statutory changes that were not in effect at the time of the court's earlier decision.
 In November 1984, after briefing and argument by the parties, the lower court denied the appellants' motion to vacate the final consent judgment. The appellants did not seek rehearing or appeal this decision.
 At the hearing on the appellants' motion, the district court (Taylor, J.) stated:
 
 
 1
 The Court's jurisdiction over this case is and was proper, and this judgment may not now be vacated under the Federal Rules as being void. The Federal Court has jurisdiction to determine its own judicial authority. So, if the defendant has challenged the Court's subject matter jurisdiction and the Court issue has been resolved against defendant by a final judgment, the judgment is not void but is Res Judicata on the issue of jurisdiction.
 
 
 2
 In this case the Defendants have challenged the Court's subject matter jurisdiction at least three times, and ruled [sic] against at least that many times on, specifically, the question of whether this Court had jurisdictional authority to hear and decide this case.
 
 
 3
 Transcript, May 31, 1984.
 
 
 4
 A final monitor's report was submitted in June 1985. On June 18, 1985, the parties stipulated to termination of the monitoring period.
 
 1987-1990
 
 5
 In August 1987, the lower court reopened this case and appointed substitute counsel to represent the inmate class in light of indications that the appellants had not complied with the final consent decree. The appellants did not respond to the reopening of the case. The appellees then began discovery and renewed monitoring the appellants' compliance with the consent judgment.
 
 
 6
 In June 1988, after a hearing, the district court imposed sanctions on the appellants for failure to comply with an order to compel discovery and answer interrogatories. The court also found the appellants to be in noncompliance with the final consent judgment and ordered a reinstitution of the formal monitoring process for a period of one year. The appellants neither sought rehearing nor appealed this ruling.
 
 1990 to Present
 
 7
 In January 1990, the appelles filed a monitoring report, and, in February 1990, they filed a motion for an order finding the appellants in noncompliance with the consent judgment and for appointment of a special independent master or monitor. The monitoring report showed that the appellants failed to implement parole guidelines as required by the consent decree.
 
 
 8
 In March 1990, the appellants filed another motion to vacate the final consent judgment and dismiss the action. The appellants again asserted that the court lacked jurisdiction to enter the final order and that it was void as a matter of law. The appellants' motion sought, alternatively, to modify the consent order to reflect the state statutory changes that had occurred since the consent decree was entered. The appellants based their motion on Rule 60(b)(4), Fed.R.Civ.P., for lack of jurisdiction, and Rule 60(b)(5), Fed.R.Civ.P., for modification of the consent judgment.
 
 
 9
 In May 1990, the district court entered an order specifically finding that it had jurisdiction and granting one modification to the consent decree in order to comport with the timeliness standards of Michigan Compiled Laws Annotated (M.C.L.A.) § 791.235(1).[1] The court denied the appellants' motion to vacate and dismiss the action. Although it concluded that there was no liberty interest in the right to parole under the Michigan statute, the lower court found that the inmates have a liberty interest in the procedure. The court also ordered continued monitoring for one year, and thereafter appointed a U.S. Magistrate as the special master/independent monitor.
 
 
 10
 Both parties filed motions for rehearing, which were denied. Thereafter, both parties appealed.
 
 II. Jurisdiction
 
 11
 The appellants' issue on appeal is whether the district court erred in denying their motion to vacate the consent judgment pursuant to Rule 60(b)(4), Fed.R.Civ.P., and to dismiss the action for lack of subject matter jurisdiction.[2]
 
 
 12
 The appellants argue that an inmate confined in the Michigan prison system does not have a constitutionally protected right to parole and that the consent decree could not create such a liberty interest. The appellants maintain that the district court acknowledged that there was no protectible right to parole and, therefore, erred by not vacating the consent decree, since it no longer had any basis to retain subject matter jurisdiction. Without jurisdiction, the consent judgment is void.
 
 
 13
 Furthermore, the appellants assert that it was error for the district court to impose procedures without first finding that a right to parole was created by the language of the Michigan parole statute. The Court notes two errors in this statement. First, the district court did not impose procedures upon the appellants. The district court merely enforced the provisions of the consent decree which the appellants voluntarily entered into before they presented it to the court for its approval.[3] Second, the appellants continue to insist that the liberty interest involved here is the right to parole.[4] The lower court on numerous occasions stated that the liberty interest involved is not in the right to parole, since none exists under the Greenholtz rationale, infra, but in the state-created procedures that make up the parole decision-making process. This is a fundamental element of this action, which should not be further mischaracterized.
 
 
 14
 The Supreme Court in Greenholtz concluded that a convicted person has no inherent constitutional right to parole. However, it stated that a court must look to the language of policies, statutes and regulations of the state to determine whether it has created any protectible rights. Further, this is to be decided on a case-by-case basis. 442 U.S. at 7-12, 99 S.Ct. at 2104-06, 60 L.Ed.2d at 675-79.
 
 
 15
 This was not a departure from its earlier holdings, in which the Supreme Court clearly ruled that protectible liberty interests may arise from state-created statutes, regulations, rules and policies. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (Nebraska law established liberty interest in prisoners' good-time credits); Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (Montana statute created a liberty interest in parole); Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (Nebraska statute conferred a protected interest in involuntary transfer to state mental hospital); Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (Pennsylvania statutory framework gave rise to a liberty interest in remaining in the general prison population). But see Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (Massachusetts law did not create a protected liberty interest in prison transfers); Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (Kentucky regulations did not establish a liberty interest in prison visitation).
 
 
 16
 The Sixth Circuit has followed the Supreme Court's rationale and has also recognized state-created interests protected by the Due Process Clause. See Spruytte v. Walters, 753 F.2d 498 (6th Cir.1985), cert. denied, 474 U.S. 1054 (1986) (Michigan created a protected interest in prisoners receiving non-threatening books); Walker v. Hughes, 558 F.2d 1247 (6th Cir.1977) (a federal prison in Michigan had policy statements that granted a liberty interest to prisoners in not having sanctions imposed on them except upon a finding of major misconduct); Mayes v. Trammell, 751 F.2d 175 (6th Cir.1984) (Tennessee's parole scheme created a liberty interest protected by the Due Process Clause), superseded sub. nom. Wright v. Trammel, 810 F.2d 589 (6th Cir.1987) (subsequent amendment of Tennessee's parole statute mooted any liberty interest under the new statute).
 
 
 17
 In the instant case in 1978, Judge Feikens analyzed whether the State of Michigan granted a protectible liberty interest to inmates by mandating that the Parole Board follow certain procedures in the parole decision-making process. After analyzing Michigan's parole statutes (M.C.L.A. 791.232 et seq.) and MDOC regulations, Judge Feikens found that they created protectible constitutional claims in favor of the appellees. He stated: "When, however, the state itself provides by statute or regulations that certain procedures be followed in determining whether or not an inmate is entitled to parole, independent liberty interests are created and the due process clause requires certain minimum procedures 'to ensure that the state-created right is not arbitrarily abrogated.' " August 1978 opinion (citing Meachum v. Fano and Wolff v. McDonnell, supra ).
 
 
 18
 Judge Feikens also made clear that it was the statutory procedures and Parole Board regulations that created the liberty interest, not the decision whether to parole. He recognized that the Parole Board, after following the required procedures, reaches "its own conclusions on the desirability of releasing such prisoner on parole by a majority vote. M.C.L.A. 791.235."[5]
 
 
 19
 In sum, although the Parole Board may have discretion in the eventual parole decision, the state, through statutes and regulations, has taken away any discretion in parole procedures. Therefore, the Michigan parole scheme is not wholly discretionary--it limits the Parole Board's authority by requiring it to follow certain procedures. See, e.g., Walker, 558 F.2d at 1253-54; Spruytte, 753 F.2d at 507-08.[6]
 
 
 20
 The appellants also argue that federal courts do not have jurisdiction to enforce procedures compelled or mandated by state law where there exists an adequate available remedy under state law.[7] This is a curious argument for several reasons. The appellees are claiming a violation of their due process rights under the Constitution of the United States. The Supreme Court has ruled that a state-created liberty interest is entitled to the protection of the federal guarantee of due process. Vitek v. Jones, 445 U.S. at 490-91, 100 S.Ct. at 1262-63, 63 L.Ed.2d at 563-64 (1980), cited in Bossetta-Goodman v. Datacom Systems Corp., 644 F.Supp. 354, 358 (E.D.La.1986), aff'd, 820 F.2d 1222 (1987). Therefore, a district court has jurisdiction to hear constitutional claims, such as those raised by the inmate class in the instant action.
 
 
 21
 Further, the remedy agreed to by both parties and presented to the court for its approval was the 1981 final consent judgment. By entering into the consent decree, the appellants waived their right to litigate the issues. The appellants appear to be contradicting their original position of voluntarily settling this action with a consent decree in federal court by now asserting that available remedies existed under state law. In essence, the appellants are objecting to the enforcement of a remedy they selected. We find this argument untenable.
 
 
 22
 A federal court has jurisdiction to determine whether it has jurisdiction over the subject matter of an action. Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 376-78, 60 S.Ct. 317, 319-20, 84 L.Ed. 329, 334 (1940); Stoll v. Gottlieb, 305 U.S. 165, 171-72, 59 S.Ct. 134, 137, 83 L.Ed. 104, 108 (1938). "The rule has been that a court's determination that it has subject matter jurisdiction is res judicata of the issue, if the jurisdictional question actually was litigated and expressly decided.... This is true even if the court is mistaken in its decision." 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3536 (1984) (citing Stoll v. Gottlieb, supra ). This rule also applies if a party had an opportunity to contest subject matter jurisdiction and failed to do so. Chicot County, supra.
 
 
 23
 Although the doctrine of res judicata is not applicable here, since this is not a subsequent lawsuit, the district court in 1981 entered a final order in which it ruled that it had jurisdiction. Furthermore, the lack of subject matter jurisdiction was raised by the appellants in their 1984 motion to vacate and was rejected by the district court. In fact, the appellants' arguments on this appeal are almost identical to those made in 1984. Yet, the appellants did not appeal the 1984 judgment. They maintain that an appeal would have been futile, since the jurisdiction of the court was specifically tied to the duration of the monitoring period and there were only two days left in the monitoring period when the court denied the appellants' motion to vacate. (On November 28, 1984, the court denied the motion to vacate and extended the monitoring period until December 1984).
 
 
 24
 Certainly, the appellants' claims of lack of jurisdiction have been considered and specifically ruled upon by the district court. The appellants did not appeal or request rehearing of the court's 1984 jurisdictional decision, nor did they appeal the reopening of the action in 1987 or the 1988 finding of the appellants' noncompliance with the consent judgment.
 
 
 25
 Alternatively, the appellants assert that, if the district court did have jurisdiction over this action initially, it lapsed with the end of the initial monitoring period in June 1985. This is because the 1981 consent judgment provided for jurisdiction only during the monitoring period. However, "the court has an independent duty to ensure that the terms of the decree are effectuated since an approved consent decree is not merely a compact between former litigants but is a court order." 10 Cyclopedia of Federal Procedure § 35.25 at 294 (3d ed. 1984) (citing Stotts v. Memphis Fire Dep't, 679 F.2d 541 (6th Cir.1982), rev'd on other grounds sub. nom. Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984)).
 
 
 26
 We have held that a case governed by a consent decree should not be closed when there are pending claims that the defendants have violated the decree. United States v. City of Cincinnati, 771 F.2d 161, 168-69 (6th Cir.1985), cited in Youngblood v. Dalzell, 925 F.2d 954, 958 (6th Cir.1991). Furthermore, the Supreme Court recently has held in an institutional reform action that the proper standard for deciding whether to dissolve a consent decree in a school desegregation case is whether the school district has complied in good faith with the decree since it was entered. The Court stated that the desegregation decree at issue was not intended to rule in perpetuity, but was intended as a temporary measure to remedy past discrimination. Board of Educ. of Okla. City Public Schools v. Dowell, 498 U.S. ----, 111 S.Ct. 630, 636-38, 112 L.Ed.2d 715, 727-30 (1991).
 
 
 27
 In the district court's August 1987 order substituting counsel and reopening the action, the court ordered the appellees' substituted counsel to take all appropriate action, including reinstituting the monitoring period, required to enforce the court's consent judgment and to assure that the relief ordered by the court is provided for the inmate class. This order was brought about by a petition to enforce the judgment filed by a member of the inmate class, as well as dozens of letters from Michigan inmates to the court alleging denials of due process as a result of the Parole Board's continued noncompliance with the 1981 consent judgment.
 
 
 28
 Although paragraph VIII(L) of the final consent decree sets a standard to govern termination of judicial supervision by tying it to the monitoring period, it was not error to reopen the action in light of claims that the appellants were violating the decree. Following Dowell, it is clear that the instant decree was not intended to operate in perpetuity, but that it is to be dissolved after the appellants have complied with it for a reasonable period of time. Id. Given the Supreme Court's recent guidance on this issue and the evidence in the record that the terms and purposes of the consent decree were not being met, we are persuaded that judicial supervision was appropriate at that point.
 
 
 29
 It should be noted that this action was not fully litigated in the district court. The parties voluntarily entered into a consent judgment to settle the action, and the court approved it. Consent judgments by their nature include compromises allowed by both parties, including waiving the right to litigate all the issues.[8] Therefore, the court never passed on the full merits of the action. However, the court did rule at the threshold that it had jurisdiction over the appellees' asserted constitutional claims. Thus, whether the appellees' claims would have withstood an adjudication on the merits is unknown.[9] As the Supreme Court stated in Greenholtz, it is to be determined on a case-by-case basis.
 
 
 30
 Federal Rule of Civil Procedure 60(b)(4) provides: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void." However, "a judgment is not void merely because it is erroneous. It is void only if the court that rendered it lacked jurisdiction of the subject matter...." United States v. Manos, 56 F.R.D. 655, 659 (S.D.Ohio 1972), cited in 11 C. Wright & A. Miller, Federal Practice and Procedure § 2862 (1973); cf. Stoll, 305 U.S. at 171-72. "[I]f a court has the general power to adjudicate the issues in the class of suits to which the case belongs, then its interim orders and final judgments, whether right or wrong, are not subject to collateral attack so far as jurisdiction over the subject matter is concerned." 7 Moore's Federal Practice § 60.25 (discussing Rule 60(b)) (citing United States v. United Mine Workers of America, 330 U.S. 258, 289-94, 67 S.Ct. 677, 694-96, 91 L.Ed. 884, 911-13 (1947); Carter v. United States, 135 F.2d 858, 861 (5th Cir.1943)).
 
 
 31
 Here, the district court ab initio had subject matter jurisdiction to review asserted constitutional due process claims. Therefore, Rule 60(b)(4) is not applicable to void the consent judgment.
 
 
 32
 Accordingly, we affirm the district court's denial of the appellants' motion to vacate the consent decree and dismiss the action.
 
 III. Modification
 
 33
 The appellees' issue on appeal is whether the district court erred by modifying a timeliness provision of the consent decree from "at least ninety days" to "at least thirty days," purportedly to comply with state law.
 
 
 34
 The final consent judgment originally contained a provision that "[a]ll initial parole hearings shall be held at least ninety (90) days before a prisoner's earliest possible release date," with one exception. (Final consent judgment, § III(B)). The consent judgment states the purpose of the timeliness section: "A fairly administered parole process requires prompt hearings, prompt decisions, and prompt implementation of those decisions." (Final consent judgment, § III(A)). Implicit in the fact that both parties consented to this provision is that the ninety-day provision was necessary to avoid untimely decisions and releases. The appellees state that the provision was included to allow the Parole Board time to decide whether to parole, and then implement any releases by the parole eligibility date. In other words, one of the purposes of the decree is to release prisoners on time.
 
 
 35
 The modification changed the timeliness provision at § III(B) of the consent judgment to read identically to M.C.L.A. § 791.235(1). That statute provides that the Parole Board hearing shall be conducted at least one month before the earliest release date.
 
 
 36
 Judge Taylor based her modification decision upon this analysis: "So the Court is not justified in requiring that a hearing be held before the statute requires it to be held, and I must move the hearing requirement up to match the statutory requirement, and all time requirements must be identical to those of the statute." Transcript, April 23, 1990 (emphasis added). The court relied upon unidentified Supreme Court cases since 1981[10] in reasoning that, since the liberty interest involved is in the statutory procedure and not the release date, the decree should conform to the statutory procedure. Id.
 
 
 37
 Therefore, the court granted the one timeliness modification and rejected the other requested modifications. At the same time, the court found the appellants in noncompliance with the decree and appointed a special master to monitor the appellants' actions.
 
 
 38
 The appellants' motion for modification was based upon Rule 60(b)(5), Fed.R.Civ.P., which provides:
 
 
 39
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.
 
 
 40
 The Sixth Circuit set forth standards for a Rule 60(b) modification of a consent judgment in Stotts v. Memphis Fire Dep't, 679 F.2d 541, 560-62 (6th Cir.1982), rev'd on other grounds sub. nom. Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984). Those standards allow modification (1) when done in accordance with basic principles of contract law; (2) when the decree is void or no longer equitable; (3) when the circumstances of the case change; or (4) when a better appreciation of the facts in the light of experience indicates that the decree is not properly adapted to accomplishing its purposes.
 
 
 41
 The appellees assert that none of these standards were demonstrated by the appellants or found by the court below. The standard of review of a court's ruling on a Rule 60(b) motion is abuse of discretion. Stotts, 679 F.2d at 561; Akers v. Ohio Dep't of Liquor Control, 902 F.2d 477, 479 (6th Cir.1990).
 
 
 42
 Changed circumstances may include either a change of fact or a change of law. System Fed'n No. 91, Railway Employees Dep't v. Wright, 364 U.S. 642, 646-47, 81 S.Ct. 368, 371, 5 L.Ed.2d 349, 353 (1961); Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 527, 106 S.Ct. 3063, 3078, 92 L.Ed.2d 405, 426 (1986). In the present case, the appellants argued that there had been a change in the Michigan statute concerning the timeliness provision. They also argued changed circumstances as a result of the 1982 amendments to the state parole statutes. We recognize that significant changes were made to the Michigan parole statutes in 1982, subsequent to the entry of the instant consent decree.[11] However, we take notice that the statute in question, M.C.L.A. 791.235(1), was not amended subsequent to the entry of the consent decree. In fact, the district court in 1984 denied this same request for modification. However, even though the statute was exactly the same in 1981 as it was in 1990, the district court granted a modification of the consent judgment to make it identical to the statute.
 
 
 43
 One of the first and most widely accepted standards for modifying consent decrees was set forth by the Supreme Court in United States v. Swift & Co., 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999, 1008 (1932). This was a commercial case in which Justice Cardozo stated: "Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned." Id.
 
 
 44
 However, we have held that consent decrees relating to institutions are "fundamentally different" from those between private parties. Heath v. DeCourcy, 888 F.2d 1105, 1109 (6th Cir.1989). This is because these types of decrees "reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions. Broader judicial discretion to modify the parties' agreement is required so that the agreed upon solution to the problem giving rise to the litigation may be fine-tuned to accomplish its goal." Id.
 
 
 45
 Therefore, in the context of institutional reform litigation, such as the instant action, the standard for modification pursuant to Rule 60(b) is more relaxed. In Heath, we articulated the standard as follows:
 
 
 46
 [T]he court need only identify a defect or deficiency in its original decree which impedes achieving its goal, either because experience has proven it less effective, disadvantageous, or because circumstances and conditions have changed which warrant fine-tuning the decree. A modification will be upheld if it furthers the original purpose of the decree in a more efficient way, without upsetting the basic agreement between the parties.
 
 
 47
 Id. at 1110.
 
 
 48
 However, even applying the more relaxed standard to this institutional action, the district court did not have sufficient reason for granting the modification. Certainly, state law regarding the timeliness of initial parole hearings had not changed. Furthermore, the "at least ninety days" language in the consent decree met the statute's "at least one month" requirement. The statute does not limit the timing of hearings to no more than thirty days prior to the earliest release date; rather, it requires that hearings be held "at least one month" prior to that date. Although broader in scope than the statute, the original decree did not violate the statute. Therefore, the consent decree and the state statute were not in conflict.
 
 
 49
 The Supreme Court has held that a federal court may enter a consent decree that provides broader relief than the court could have awarded after a trial, as long as the decree does not conflict with or violate the statute upon which it is based. City of Cleveland, 478 U.S. at 524-28, 106 S.Ct. at 3076-78, 92 L.Ed.2d at 425-27. The Court distinguished two earlier cases, System Fed'n No. 91, Railway Employees Dep't v. Wright and Firefighters Local Union No. 1784 v. Stotts, supra, on the basis that in each there was a conflict between the judicial decree and the underlying statute. City of Cleveland, 478 U.S. at 524-28, 106 S.Ct. at 3076-78, 92 L.Ed.2d at 425-27. Therefore, a consent judgment may be entered and enforced where it provides relief broader than the specific language of the statute at issue.
 
 
 50
 Consistent with this analysis, the Supreme Court in Firefighters Local Union No. 1784 stated:
 
 
 51
 It is to be recalled that the "scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it" or by what "might have been written had the plaintiff established his factual claims and legal theories in litigation."
 
 
 52
 467 U.S. at 574, 104 S.Ct. at 2585, 81 L.Ed.2d at 496 (quoting United States v. Armour & Co., 402 U.S. 673, 681-82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256, 263 (1971)).
 
 
 53
 Moreover, given the lower court's finding of noncompliance by the appellants, it is apparent that the purpose of the consent judgment and the continuing need for it have not abated. It is evident from the court's statements made during the hearing on this matter (see supra) that the court thought it compelled to modify the consent decree. It is in this respect that we hold the district court erred. Without a conflict between state law and the consent judgment, the court was not compelled to modify the decree. Therefore, we reject the district court's reasoning upon which the decision to modify was based.
 
 
 54
 In sum, there has been no change in the statutory timeliness requirement regarding initial parole hearings since the consent decree was entered. Nor is the original purpose of the decree's timeliness requirements (to make the parole system work fairly and promptly) furthered in a more efficient way by the modification. In light of the preceding, there was no justification or sufficient basis for the lower court to grant a modification. Accordingly, we hold that the district court abused its discretion, and we reverse.
 
 IV. Conclusion
 
 55
 For the foregoing reasons, the judgment of the district court is AFFIRMED in part and REVERSED in part. We REMAND the action to the district court for such further relief or other orders as may be appropriate, pending a showing of compliance for a reasonable period of time with the terms of the final consent decree. At a reasonable time after the objectives of the consent decree have been achieved, the parties may move the court, on due notice, for dissolution of the decree.
 
 
 56
 DAVID A. NELSON, Circuit Judge, concurring.
 
 
 57
 I concur in the judgment and in all but Part II of the court's opinion.
 
 
 58
 The district court's power to grant injunctive relief in this case was, at the outset, problematic. The complaint was drafted on the theory that the defendant officials were depriving parole-eligible inmates of "liberty" without due process of law, a circumstance that would have justified the granting of redress under 42 U.S.C. § 1983. The problem was that neither state law nor federal law created any substantive right to the "liberty" that release on parole would represent. The district court tried to circumvent the problem, as has been noted, by holding that when the state required "that certain procedures be followed in determining whether or not an inmate is entitled to parole, independent liberty interests are created...." In the light of subsequent case law, it is safe to say that this analysis was almost certainly incorrect.
 
 
 59
 A state creates a protected liberty interest, as we now know, "by placing substantive limitations on official discretion." Olim v. Wakinekona, 461 U.S. 238, 249 (1983) (emphasis supplied). If state law requires officials to follow a prescribed procedure in exercising their discretion, it may well give rise to rights enforceable in a state court, but it does not, by itself, create any constitutionally protected "liberty interest" a deprivation of which can be redressed in federal court. "[A]n expectation of receiving [a particular kind of] process is not, without more, a liberty interest protected by the Due Process Clause." Id. at 250, n. 12. Cf. Inmates of Orient Correctional Institute v. Ohio State Adult Parole Authority, 929 F.2d 233, 237 (6th Cir.1991).
 
 
 60
 It is probably unfortunate that this case was permitted to go forward in a federal court. The defendants having accepted the federal court consent decree without reservation, however, I agree that the challenge to the court's jurisdiction comes too late.
 
 
 61
 The parties to a lawsuit cannot confer subject matter jurisdiction on a court by agreement, of course, but this does not preclude the compromise of legitimate and substantial legal questions. It would not have been fanciful, a decade ago, to think that a federal court could exercise jurisdiction over the case at bar--and the defendants chose to enter into a compromise under which the plaintiffs agreed to terms that the defendants thought they could live with, while the defendants acceded to the notion that the district court had jurisdiction. The defendants having thrown in the towel on the jurisdictional issue then, I am not persuaded that they must be allowed to retrieve the towel now.
 
 
 62
 I fully endorse this court's suggestion that the consent decree should be dissolved once its objectives have been achieved. Mindful of the fact that it would have been preferable to let the state courts of Michigan handle enforcement of Michigan's procedural rules for dealing with the release of Michigan prisoners on parole, I venture to express the hope that dissolution of the decree will come sooner rather than later.
 
 
 
 *
 The Honorable Thomas A. Higgins, United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 The court denied the appellants' other requests for modifications to the consent decree
 
 
 [2]
 The appellants do not appeal the district court's denial of their other requests for modifications to the consent decree
 
 
 [3]
 The Supreme Court in Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 522, 106 S.Ct. 3063, 3075, 92 L.Ed.2d 405, 423 (1986), stated: "Indeed, it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all.... More importantly, it is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree." (citations omitted)
 
 
 [4]
 The appellants cite two Michigan Court of Appeals cases for the proposition that the Michigan parole statutory scheme does not create a liberty interest. We find both cases inapplicable. In Hurst v. Dep't of Corrections Parole Bd., 119 Mich.App. 25, 325 N.W.2d 615 (Mich.Ct.App.1982), the court concluded that the early parole provision of the Michigan statute created only an expectation or hope of an early parole. Therefore, the court held that the statute did not create a right to parole. This is in accordance with our current views; however, it does not deal with a liberty interest in state-created procedures, which is the issue at hand. The court in Shields v. Dep't of Corrections, 128 Mich.App. 380, 340 N.W.2d 95 (Mich.Ct.App.1983), ruled that the inmate who was provided with a parole hearing and informed of the reasons for denial of parole was afforded adequate due process. That case is not applicable because there the state adequately followed its procedures; whereas in the present case, the district court found the state to be in noncompliance with its procedures on numerous occasions
 
 
 [5]
 We note that the cases upon which Judge Feikens relied in 1978 were the same cases upon which the Supreme Court relied for its decision in Greenholtz. Also, in its post-1979 decisions, the district court did not issue any opinions inconsistent with Greenholtz
 
 
 [6]
 In the hearing on this matter in 1990, Judge Taylor stated: "It's true, as defendants argue, that the release is a discretionary matter with the Commission. The pursuit of the appropriate procedures, however, in making the release determination is not discretionary, and the prisoners do have a liberty interest in that procedure being followed in each of their cases." Transcript, April 23, 1990
 
 
 [7]
 Additionally, the appellants have raised an Eleventh Amendment defense to jurisdiction. The Eleventh Amendment prohibits a suit against a state when the state is the real party in interest. The case at hand seeks an injunction against state officials in their official capacities. The final consent decree is based on state law only to the extent that the state laws created a liberty interest protected under the Due Process Clause of the Fourteenth Amendment. The consent decree is, in effect, an injunction granting prospective relief to the inmate class
 Relying upon Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Sixth Circuit has held that state officials may be sued in their official capacities for injunctive relief. Banas v. Dempsey, 742 F.2d 277 (6th Cir.1984), aff'd, 474 U.S. 64 (1985); Freeman v. Michigan Dep't of State, 808 F.2d 1174 (6th Cir.1987).
 Therefore, the Eleventh Amendment is not a bar to the district court's jurisdiction over this action.
 
 
 [8]
 For a more extensive discussion of consent decrees, see United States v. Armour & Co., 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed. 256 (1971)
 
 
 [9]
 As Justice Cardozo stated in United States v. Swift & Co., 286 U.S. 106, 116-17, 52 S.Ct. 460, 463, 76 L.Ed. 999, 1007 (1932): "We do not turn aside to inquire whether [these claims] could have been opposed with success if the defendants had offered opposition. Instead, they chose to consent, and the injunction, right or wrong, became the judgment of the court."
 
 
 [10]
 We are unable to determine the origin of this reasoning or point to any Supreme Court cases for guidance
 
 
 [11]
 We understand that the parole statutory changes made since 1981 were designed to streamline the parole decision-making process and promote efficiency, which is consistent with the purpose of the consent judgment. See plaintiffs' monitoring report at 33-36